Judge Green.
The appellant filed his bill and amended bill, in the Williamsburg Chancery, stating that he was the sergeant of the borough of Norfolk, and as such authorised and bound to collect the sums assessed upon the land-holders of Norfolk, for the paving of the streets, under an Act of Assembly: that Wilson Boush, the holder of 72 feet of land on Church street, had been duly assessed under that Act, -to the payment of $ 187 92: that this sum, with others assessed upon other persons, was directed by the proper authority to be collected and paid to Elzey Burroughs, who had paved the street: that at the request of Boush, and upon his promise to re-pay him, he had paid the said sum of money to Bur~ roughs, who thereupon assigned his claim to the complainant: that he instituted a suit at law against Boush, and upon the trial, offered evidence tending to prove Boush’s request to him to pay the money,- whereupon, the Court de *393 cided, that Boush was.not liable to pay the assessment, because it appeared that he had but a life-estate in the lot, in respect of which the assessment was made; the reversion in fee being in his daughter Frances Maria: that he has no means, at law, to assert his claim, either against Boush or his daughter, who are, in equity, either separately or jointly, in proportion to their respective interests in the lot, benefited by the paving of the street, liable to pay the amount of the demand. He makes Boush, his daughter, Burroughs, and the borough of Norfolk, defendants, and prays general relief. The case came on as to Boush and his daughter, upon the bill taken pro confesso for want of appearance. The Act of Assembly, the assessment, and order of Court authorising it, and the petition of sundry persons, of whom Boush was one, to the Mayor, Recorder and Aldermen of the borough of Norfolk, praying for an order to pave the street in 'question, in pursuance of the Act of Assembly, are exhibits in the cause.
The first section of the Act empowers the Court of Norfolk borough to cause any street, or part of a street, in Norfolk, to be pavedj whenever they may deem it proper, or whenever the owners of lots, or a majority of them, on such street, or part of a street, shall petition them to do so. The 4th section provides for apportioning the expense of paving, between the individual proprietors of the lots on the street so paved. The 5th section directs the collector of the taxes of the corporation, so soon as the paving is begun, to levy by distress and sale, as in case of public taxes, on each owner of a lot on the street to be paved, one dollar per foot front of the lot which he or she may hold; and if the sum so le'vied be not sufficient to complete the paving, the Court may, upon the application of a majority of the land-holders, make such addition to the expense, as may appear just and reasonable; and so soon as the pavement is completed, and the committee have apportioned the,expense, the collector is directed to proceed, in like manner, to collect from each lot-holder the balance due from him. *394 The 6th section provides, that if the owner of any lot shall reside out of the corporation, or the lot be not in the occupation of the proprietor, the tenant in possession shall be answerable for the expense aforesaid, to be deducted from the next rent, if he be tenant from year to year; or if he be tenant for a term of years, from the rent to become due for the last year of the term. The 7th section provides, that if the lot be vacant, and the ¡Proprietor has no property within the corporation subject to distress, the collector majr, upon motion in the name of the corporation, recover the amount assessed against him.
One of the grounds upon which the appellant insists that a Court of Equity has jurisdiction in this case, is, that the Act imposes a lien upon the lot itself, for the payment of the assessment; and that this creates an equity between the tenant for life and remainder-man, to contribute rateably to the discharge of this lien. If this were true, the Court would have an unquestionable jurisdiction to enforce the lien, and to compel contribution. There is not, however, a single provision of the Act, which countenances the idea that it was intended to subject the lot itself to a lien for the payment of the assessment. On the contrary, all the provisions of the Act shew that it was intended to impose nothing but a personal liability upon the person, whoever it might be, liable to the payment of the sum assessed. It subjects his property to distress and sale, as for public taxes. This extends only to personal property; and if he has no property liable to distress, then it subjects him to a personal judgment on motion; and these are the only remedies provided by the Act. There was, therefore, no lien on the lot; nor could any moral or equitable obligation, upon any party, arise out of this Act. It is a matter of strict law. The party liable, whether the tenant for life, or the reversioner, or both, was liable only by virtue of the Act, and as the Act prescribed; that is, personally.
There is some difficulty in ascertaining what description of persons was intended to be responsible for the expenses *395 of paving. The Act describes the persons intended to be made so liable, by various terms, “ owners of lots,” “individual proprietors of lots,” “land-holders,” “lot-holders,” “the proprietors.” These terms are used as synonymous through the Act; and upon the whole, I think there is enough in the Act to shew, that freeholders in possession, whether seised in fee simple, or of a lesser estate, were intended to be subjected to the payment of the expense of paving. The Act distinguishes between the proprietor and the tenant in possession, from year to year or for a term of years; making the former personally liable in all cases, unless there be such a tenant in possession; in which case, the latter is made personally liable in the first instance, with a right to retain against the landlord out of the rents. The Act, by various synonymous terms used to describe the person intended to be liable to assessment, meant any one seised of the land, or having any title thereto,‘other than as a tenant for years. JBoush was, therefore, liable on this ground; his property might have been dis-trained; and it is not alleged that he had none liable to distress; or a judgment might have been had against him, upon motion, in the name of the corporation; or if not, then Moseley had a clear remedy against him at law, upon the ground that he had paid money at his request, and upon his promise to re-pay it. This promise was obligatory, whether Boush was bound or not bound, originally, to pay the assessment.
The plaintiff, therefore, having various perfect and unembarrassed remedies at law, having failed in one of them, by the error of the Court of Law, applies to a Court of Equity to correct that error, without alleging any one circumstance upon which to found the jurisdiction of that Court; no fraud, no accident, no mistake, no trust. ’ '
If my construction of the Act of Assembly is wrong, and the Act is supposed in this case to have imposed no obligation upon either the tenant for life or reversioner, then a Court of Equity can raise no obligation not imposed *396 by the Statute; or if both the tenant for life and reversioner were bound, or the reversioner only was bound, the legal remedies prescribed by the Act, by distress and motion, were open to the complainant, and there was no occasion for the assistance of a Court of Equity.
It is said, that Boush, or Boush and his daughter were debtors to Burroughs, who had assigned this debt to the plaintiff; and that a Court of Equity has jurisdiction to entertain the suit of an assignee of a chose in action against the debtor, in all cases, upon the mere ground that the plaintiff cannot sue in his own name, at law. I cannot, for myself, accede to this proposition. If it were so, a very large portion of the proper business of the Courts of Law might be transferred to the Courts of Equity, and the debtor deprived of his right to his trial at law, and by a jury, without his consent or default. To give such a jurisdiction, it ought to appear that the plaintiff is prevented from recovering at law, in the name of the assignor, by collusion between the debtor and assignee; or that, from the nature of the claim, or the circumstances of the case, the assignor himself would have had a right, if he had not assigned, to claim the aid of a Court of Equity.
This question, however, does not arise in this case. Burroughs had no claim upon the owner of the lot. His claim was against the corporation, who had contracted with him; and the owner of the lot was a debtor to the corporation, who might, by their officer, have distrained or obtained a judgment on motion against him.
The decree should be affirmed.
The other Judges concurred, and the decree was affirmed.*