## THE ONTARIO BANK vs. MUMFORD and others.

As a general rule, the court of chancery will not entertain a suit brought by the as-
signee of a debt, or a chose in action, which is a mere legal demand; but will
leave him to his remedy at law, by a suit in the name of the assignor.

Where, however, special circumstances render it necessary for the assignee to come
into a court of equity for relief, to prevent a failure of justice, he will be allowed to
bring a suit in chancery, in his own name, upon a mere legal demand.

In this state no provision is made, by law, authorizing the assignee of a chose in ac-
tion to bring a suit at law in the name of the assignees in bankruptcy of his
assignor, without their consent.   And where it appears that the assignee in bank-
ruptcy, of the obligee in a bond, refuses to join in a suit for the recovery of the
damage consequent upon a breach of the condition thereof, such refusal will
justify the interference of the court of chancery, in behalf of the assignee of such
bond, if the only remedy of such assignee, at law, is by an action in the joint
names of the assignor thereof and of his assignee in bankruptcy, or in the name of
the assignee in bankruptcy alone.    :

Where a debt is due to two persons jointly, and one of them is decreed to be a bank-
rupt, or where one of them makes an assignment under the insolvent acts, the
action for the recovery of the debt, in a court of law, must be brought in the names
of the other creditor and of the assignees, jointly; and neither can sue in his own
name alone.

Nor can the suit be brought in the joint names of the original creditors, in such a
case; except where the bankrupt was a mere nominal owner of the debt, as trustee
or otherwise.

Assignees in bankruptcy do not take the whole legal title in the bankrupt's property,
as heirs and executors do.   Nothing vests in them, even at law, but such estate
as the bankrupt had a beneficial as well as a legal interest in; and which in-
terest is to be applied, by the assignees, for the payment of the debts of the bank-
rupt.

The fact that the assignment of a bond, and the damages to be recovered thereon, in
the name of the assignor, is not absolute and unconditional, but merely as a col-
lateral security, makes no difference with respect to the right of the assignee to
sue in the name of the assignor alone.   The action in such a case must be brought

The Ontario Bank *v.* Mumford.

in the name of the assignor; and it cannot be sustained if brought in the names of his assignees in bankruptcy, who have no interest therein.

And even if the assignor of the bond were dead, that would afford no excuse for the assignee's coming into a court of equity for relief. For the suit upon the bond may, in that case, be brought in the name of the assignee, under the provision of the statute on the subject, in case there is no personal representative of the decedent, or where such representative refuses to sue for the damage sustained by a breach of the condition of the bond.

THIS was an appeal from a decree of the vice chancellor of the eighth circuit, allowing the demurrer of the defendant G. H. Mumford, one of the defendants, and dismissing the bill as to him. The complainants' bill showed the following state of facts: In July, 1837, the defendant E. H. S. Mumford was the owner of a flouring mill and lot of land, in the county of Monroe, which was subject to the lien of a mortgage for $10,000, given by him to W. W. Mumford; and which was then held by Edward, Rufus, and Frederick Prime, as assignees and trustees. E. H. S. Mumford, being such owner, sold the premises to H. Hutchinson for $23,000; and to induce Hutchinson to become such purchaser, agreed to pay off and discharge the mortgage thereon, or to obtain a release of the premises from the lien of the mortgage, and to give Hutchinson a bond with security for the performance of that agreement. A bond was thereupon given to Hutchinson, by E. H. S. Mumford as principal, and by G. H. Mumford as his surety, in the penalty of $20,000, dated the 14th of July, 1837; with a condition which recited the agreement of E. H. S. Mumford, and stated that the bond was to be void if E. H. S. Mumford should *not* at all times thereafter indemnify Hutchinson, and save him harmless from the mortgage, and from the payment of any moneys thereon, or by reason thereof. In January, 1840, Hutchinson mortgaged to the complainants the flouring mill and lot so conveyed to him, together with other property, to secure the payment of a debt of $11,000, and interest. And at the same time, as a part of the security for that debt, Hutchinson made an absolute assignment to the bank of all his right and title to the bond of E. H. S. and G. H. Mumford; and authorized the bank to use his name for the recovery of any damage he might at any time

The Ontario Bank *v.* Mumford.

thereafter be entitled to recover under, or by virtue of, such bond, as fully as he could himself do. In March, 1842, the amount due upon the prior mortgage, then held by the Primes, not having been paid, the holders and owners of that mortgage commenced a suit for the foreclosure of the same, before the vice chancellor : in which suit, Hutchinson and the Ontario Bank, together with the obligors in the bond of indemnity, and others, were made defendants. And the usual decree for a foreclosure and sale of the mortgaged premises was subsequently made in that suit ; under which decree all that part of the mortgaged premises, in the county of Monroe, which had been mortgaged by Hutchinson to the bank, was sold by a master, in December, 1842, and was conveyed to the purchaser, who entered into possession thereof under such conveyance. Previous to March, 1842, the bank commenced a suit against Hutchinson, to foreclose his mortgage ; in which suit W. W. Mumford, who claimed some interest in the mortgaged premises by title subsequent to the complainants' mortgage, was made a defendant. And in June, 1842, the usual decree for a foreclosure and sale was made in that suit, with a decree over against Hutchinson, for the deficiency, in case the mortgaged premises should not sell for sufficient to pay the debt and costs. In April, 1843, the whole of the mortgaged premises were sold, by a master, under this last mentioned decree, for the sum of $305 ; leaving the deficiency still due to the bank, as reported by the master, more than $12,000.

After the commencement of both of these foreclosure suits, Hutchinson petitioned the district court of the United States for a discharge under the bankrupt act ; and in May, 1842, he was, by the decree of that court, duly declared a bankrupt, and all his property was vested in E. D. Smith, one of the defendants in this suit, as assignee in bankruptcy. Whether Hutchinson was ever discharged from his debts under the bankrupt act, or whether at the time of presenting his petition to the district court he had any interest in the mortgaged premises, which could pass to the assignee under the decree in bankruptcy, did not appear. But the bill alleged that the assignee in bank·

The Ontario Bank *v.* Mumford.

ruptcy either had, or claimed, some equitable interest in the bond assigned by Hutchinson to the bank; and that he had refused to join with the complainant in a suit upon such bond. The bill also contained a charge that the premises conveyed to Hutchinson, by E. H. S. Mumford, if free from the incumbrance of the mortgage mentioned in the condition of the bond of the defendants E. H. S. and G. H. Mumford, would have been a good and ample security to the Ontario Bank for its debt; and that the bank would have been able to collect the full amount due upon its mortgage, by a foreclosure of the same, if E. H. S. Mumford had paid off the previous mortgage, or procured a release of the premises from the lien thereof. The complainant therefore prayed that the obligors in the bond to Hutchinson might be decreed to pay the amount of the deficiency due to the bank upon the foreclosure of its mortgage.

The defendant G. H. Mumford, the surety in the bond to Hutchinson, demurred to the bill; and stated as causes of demurrer: *first*, that no sufficient breach of the condition of the bond was stated in the bill, showing a present liability of the obligors in the bond to the complainant; and *second*, that the remedy of the complainants, if any they had, was by an action at law upon the bond. And the vice chancellor allowed the demurrer, and dismissed the bill upon the last ground stated in the demurrer; without expressing any opinion upon the first.

The following opinion was delivered by the vice chancellor.

WHITTLESEY, V. C. This is the case of a bond of indemnity assigned to the complainants, upon which, by the rules now in force, the complainants could sue at law in the name of the obligee; but upon which they came into this court for their remedy, without suggesting any special reason for resorting to this jurisdiction.

It has been held in some cases, both in this country and in England, that equity will not lend its aid to enforce the rights of the assignee of a chose in action, unless its interposition becomes necessary, by reason of the inability of a court of common law to do him adequate justice. And further, that the assignee

of a chose in action must pursue his remedies in the same tribunals in which the assignor, had no assignment been made, was bound to seek them. It is only when obstacles are interposed, to the remedy at law, that chancery will lend its aid. (*Adair* v. *Winchester*, 7 *Gill & John.* 114. *Grover* v. *Christie*, 2 *Har. & John.* 67. *Charter* v. *United Ins. Co.*, 1 *John. Ch Rep.* 463. *Hammond* v. *Messenger*, 9 *Simons*, 327.) There are cases, however, the other way. (*Winn* v. *Bowles*, 6 *Munf.* 23. *Young* v. *Person's adm'r.*, 2 *Hayw.* 223. 2 *Story's Equity*, § 1057, a., 3d ed.) In this case there does not seem to be any good reason stated for coming into this court. There is no special ground for equitable relief stated; nor is any discovery sought. The bill indeed does state an injury or damage to the assignees, the complainants, and not to the obligee; and from this it is suggested, in argument, that the obligee in the bond must fail in a suit at law, in his name, upon the issue of *non damnificatus*, as no injury or damage can be shown to him. It can hardly, however, be contended, I think, that the proof of damage or injury, according to the letter of the bond, will be less strenuously insisted upon, in this court, than in a court of law. The assignment of the bond was the mere assignment of the right to receive the damages which the obligee might sustain. And in the prosecution of a suit upon it, for the benefit of the assignee, damage or injury must be shown to have been sustained by the obligee, or the plaintiff must fail in any court. This can be shown as well in a court of law as in this court, and that appears to be the proper tribunal to try the question of damage.

The demurrer is allowed; and the bill must be dismissed, with costs.

*A. Taber*, for the appellants. The bond of E. H. S. Mumford and G. H. Mumford to Hutchinson, executed simultaneously with the deed from E. H. S. Mumford, was a collateral security for the performance by him of his agreement, as stated in the bill, that he would pay off and discharge the prior mortgage upon the premises. The bond had respect to the title and

The Ontario Bank *v.* Mumford.

·not the person of the obligee. The assignee of Hutchinson's title, then, could claim the benefit of this collateral security. The bond was equivalent to a covenant, by both obligors, against incumbrances upon the land. The complainants became assignees of Hutchinson to the extent of $11,000, by virtue of the mortgage from Hutchinson to them, for that amount, upon the premises, and for which they paid a full consideration. And if the mortgage itself did not make the complainants assignees of Hutchinson's title, yet the foreclosure of the mortgage and purchase of the premises by the complainants did; and it gave them, in equity, the same remedy against the obligors which Hutchinson himself had before the assignment.

There was in fact an assignment to the complainants of the bond, as well as of the premises to which it related; and the acceptance of the mortgage by the complainants was upon the faith and in reliance that the bond would protect the title from the previous incumbrances. And the complainants have sustained damages directly, by reason of the previous mortgage, to the full amount due upon their mortgage. The bill states that had the previous mortgage been paid and discharged, according to the condition of the bond, the mortgaged premises would have been good security for the full amount secured to the complainants by the mortgage; but that, by the foreclosure of the previous mortgage, the title was cut off and the complainants' security destroyed.

The defendant cannot allege that Hutchinson himself is not damnified by the previous mortgage; for by reason of that mortgage a decree has been obtained, and enrolled and docketed against him personally, for the deficiency still due the complainants; and, as the bill states, there would have been no such deficiency had the previous mortgage been paid according to the condition of the defendant's bond.

A court of equity is the proper tribunal to afford relief in this case, and not a court of law. The transactions set forth in the bill would give the complainants an equitable claim to the bond in question, and for relief against the defendants, had there been no assignment in fact of the bond to them. For the bond

was an equitable guaranty of the complainant's mortgage. And there was an assignment in fact of the bond, and of the rights of assignees, which formerly could only have been enforced in a court of equity. The case therefore is properly cognizable by this court; although, in modern times, courts of law allow suits to be maintained in the name of the assignor for the benefit of the assignee. This court has no right to relinquish its ancient and acknowledged jurisdiction on that ground.

The decree or judgment against Hutchinson personally was a breach of the condition of the bond given to indemnify him; and whether the damages extend to the full amount of such decree is immaterial; the bill cannot be dismissed on the demurrer. A bond for mere personal indemnity may be enforced by bill in this court. And before the foreclosure of the previous mortgage, the defendants might have been compelled to pay off and discharge the same. As that cannot now be done, they can only indemnify Hutchinson, or his assignees, by paying the amount which has been lost by reason of the previous mortgage; and the prayer of the bill in this case admits of that relief.

In support of these propositions, which are designed to meet the first cause of demurrer, I cite the following cases; which I think establish the principle, that where a collateral security is given for the payment of a debt, or the fulfilment of a contract or any other engagement, the party to whom the debt is to be paid, or the engagement is to be fulfilled, has a right to the collateral security; and that this right will pass to him, whoever is in possession or owns the original right, and it may be enforced in a court of chancery in the name of the latter. The first case which I cite is referred to in almost all 'the subsequent cases on this subject. It is *Maure* v. *Harrison*, (*Eq. Cas. Abr.* 93, *K.* 5;) where it was adjudged that a bond creditor shall, in chancery, have the benefit of all collateral bonds. In *Moses* v. *Murgatroid*, (1 *John. Ch.* 118,) that case is referred to with approbation. And the court says that these collateral securities are in fact trusts, created for the better security of the debt; and it is the duty of this court to see that they fulfil their design *Phillips* v. *Thompson*, (2 *John. Ch.* 418;) *Curtiss* v. *Tyler*

The Ontario Bank *v.* Mumford.

(9 *Paige*, 432,) and *Halsey* v. *Reed*, (*Id.* 446,) are cases which decide that where an endorser or the assignor of a bond and mortgage takes additional security, or indemnity to himself, it shall enure to the benefit of the holder of the principal debt. *Homer* v. *The Savings Bank of New Haven*, (7 *Conn.* 478;) *Russell* v. *Clark*, (7 *Cranch*, 69;) and *The United States* v. *Sturges*, (1 *Paine's C. C. Rep.* 525,) are also cases in which the principle contended for is settled or acknowledged. Several of these cases were bonds of indemnity; and the bills were filed by the assignee, or the person equitably entitled to the benefit of the bond, and not by the obligee himself.

As to jurisdiction, it must be conceded that originally this court alone had jurisdiction in cases of assignment; and that such jurisdiction is not to be abandoned because courts of common law may in certain cases of assignment give a remedy. (1 *Story's Eq.* § 1057. *Id.* § 64, *note i.*, 3d ed. 7 *Paige*, 560.) The case of *Hammond* v. *Messenger*, (9 *Sim. Rep.* 327,) which will be cited on the other side, Justice Story says is not law in this country. This case, however, is not merely a suit by a naked assignee, showing no cause for coming into the court of equity. Our case, as stated in the bill, is purely equitable, and arises exclusively from principles of equity. Possibly an action at law, in the name of Hutchinson, could not be maintained for any thing but the damage arising from the personal decree against Hutchinson, which he has not yet paid; nevertheless the complainants stand in his place, and they show that they have sustained damage.

Assuming that the sale under the $10,000 mortgage, the conveyance to, and possession taken by the purchaser, was an eviction of Hutchinson, or the assignee in bankruptcy, and was at the same time a destruction of so much of the complainants' mortgage security as rested on the land in question, both have sustained damage by the breach of the condition to indemnify. Indeed the decree against Hutchinson was a breach of the bond in question; taken as a mere bond of indemnity. (3 *Com. Dig.* 112, *Condition to indemnify*. *Fish* v. *Dana*, 10 *Mass. Rep.* 46.) And this court will sustain a bill to compel the per

The Ontario Bank *v.* Mumford.

formance of a covenant for general indemnity. (*Ranelaugh* v. *Hayes*, 1 *Vern.* 189. 1 *Ch.. Cas.* 146, *S. C. Buckingham* v. *Ward,* 3 *Atk.* 385. 10 *Ves.* 161, *S. C. Champion* v. *Brown,* 6 *John. Ch.* 405.) Hutchinson, as appears by the bill, has not been discharged; yet he has been declared a bankrupt, by which his title to the land, and his interest in the residue of the bond, passed to the assignee in bankruptcy; with the right to sue for the same in his own name. Under the English bankrupt acts, nothing passes to the assignees, except those things in which the bankrupt had some beneficial interest, applicable to the payment of his debts. A mere trust interest, held by the bankrupt for another, does not pass. (*Scott* v. *Surman, Willes,* 402. *Winch* v. *Keeley,* 1 *T. R.* 619. *Carpenter* v. *Mornell,* 3 *B. & P.* 40. *Gladston* v. *Hadwin,* 1 *M. & S.* 526.) But if any, even the most remote beneficial interest was held by the bankrupt, an action at law for that interest, at least, may be maintained, in the name of the assignees. (*Per Lord Alvanly,* 3 *B. & P.* 41.) How then would these complainants and the assignee stand in regard to their respective remedies at law? There must be a suit in the name of Hutchinson, on this bond, for the whole damages, which evidently could not be maintained; because it would be necessary that he should recover not only the damage to the complainants, the legal title to which damage may be supposed to remain in him, but also the damage to himself, the legal title to which has passed to the assignee. Or a suit must be brought in the name of the assignee in bankruptcy; which, for a similar reason, would be impracticable. For there is no law, which invests the assignee with the right to prosecute for the benefit of a cestui que trust of the bankrupt. He is not the holder of so much of the legal title to this contract, as supports the equitable interest of the complainants. A suit in the joint names of Hutchinson and the assignee in bankruptcy, would be impracticable. For the law does not permit two persons, whose rights have accrued at separate times, and who have no joint or common interest, to unite in a suit upon the same contract. And if they should do so, and should recover, and one of the parties should receive all

The Ontario Bank *v.* Mumford.

the damages recovered, it would require a suit in equity, at the end of that suit at law, to apportion those damages between them. Separate suits on the same covenant, in the name of the bankrupt, and of his assignee, clearly could not be maintained. For the law does not permit a contract with a single individual to be split up, and sued for in parcels. No such action, as any of those above supposed, has been sustained at law. I assume, that any such remedy at law is at least doubtful and difficult; whereas, the authorities cited show the matter of this bill to be within the ancient and acknowledged jurisdiction of this court. If this be so, this court will never dismiss us, and send us upon an errand of doubtful experiments in a court of law. (*Am. Insurance Co.* v. *Fisk*, 1 *Paige*, 92. *Teague* v. *Russell*, 2 *Stew. Alab. Rep.* 420.)

*F. M. Haight,* for the respondent. The complainants' remedy, if any they have, is at law. It will not be pretended that Hutchinson could have come into this court, to seek his remedy, in case of a breach of this condition. He must have brought his action at law. Are the complainants, coming here simply as assignees of this bond, asking for no discovery, and suggesting no special ground of equity jurisdiction, in any better condition for invoking the interference of a court of chancery than Hutchinson would have been? We contend not. The cases are numerous, both in this country and in England, holding that the mere relation of assignee of a chose in action, recoverable in a court of law, will not authorize a party to come into this court for relief; and that in order to sustain his bill, the complainant must show that he cannot sue at law. Or he must show that the assignor refuses to allow his name to be used as plaintiff, at law, or some similar ground of equitable jurisdiction. (*Mitf. Pl.* 123.) The assignee of a chose in action has not a right in all cases, to come into a court of equity upon the mere ground that he cannot sue in his own name at law. He must show that he is prevented from suing in the name of the assignor, or that the assignor himself would have had a right to go into a court of equity. (*Moseley* v. *Boush*, 4 *Rand. Rep.* 392.)

Equity does not lend its aid to enforce the rights of the assignee of a chose in action, unless its interposition becomes necessary, by reason of the inability of a court of common law to do him adequate justice. (*Aduir* v. *Winchester,* 7 *Gill & John.* 114. *Gover* v. *Christie,* 2 *Har. & John.* 67.) In *Smiley* v. *Bell,* *Martin & Yerg. Rep.* 378,) A. assigned to the complainant an open account against the defendant. A suit was brought at law in the name of A., but pending the suit he died, and no person would administer; whereupon the complainant filed his bill. But it was decided that the court of chancery had no jurisdiction. So in this court, upon a bill filed by the assignees of a policy of insurance, stating no other grounds for equitable relief than the assignment and the refusal of the insurers to pay, a demurrer, upon the ground that there was an adequate remedy at law, was sustained by Chancellor Kent. (*Carter* v. *United Ins. Co.,* 1 *John. Ch.* 463.) A similar case was determined in the same way in the English court of chancery as early as 1728, (*Moseley,* 83,) and that decision was affirmed in parliament. The same point was again decided by Lord Hardwick in 1739, (1 *Atk.* 547.) The chancellor, in each case, said that if such bills were sustained, the court of chancery would have to determine all policies. The same doctrine is reiterated in the English court of chancery as late as 1839. The case of *Hammond* v. *Messenger,* (9 *Sim.* 327,) decides that the assignee of a debt cannot file a bill in equity against the assignor and debtor; unless he clearly shows, in his bill, that he is unable to sue at law. The vice chancellor, in delivering the opinion of the court in that case, says, " As a general proposition, a person who has a right to sue· B. in the name of A., for a debt due from B. to A., cannot file a bill in this court without special circumstances. I never remember such a bill without special circumstances." One of the circumstances relied upon in that case, to take it out of the general rule, was a pretence by the defendant that there was a private debt due to him from the assignors; which he claimed to be entitled to set off. But the court said that if there is such a right of set-off, at law, the defendant has a right to avail himself of it.

The Ontario Bank *v.* Mumford.

The case of *Winn* v. *Bowles,* (6 *Munf.* 23,) which the vice chancellor seems to think holds a different doctrine, so far as I can gather from a note of the case in the Equity Digest, merely determines that the right of an assignee to come into equity is not affected by the statute of Virginia, which authorized him to sue at law in his own name. It does not necessarily conflict with the case in Randolph; which harmonizes with the other cases to which reference has been made.

Considering it then as established, that in order to sustain a bill in this court, it is necessary to allege some special grounds of equity jurisdiction, we proceed to the inquiry, whether such special circumstances are here shown. No reason is set out in the bill itself why the complainants could not proceed at law. There was no refusal on the part of Hutchinson to suffer his name to be used as plaintiff; nor was there any such refusal on the part of his assignee in bankruptcy, if it was proper to bring the suit in his name. The entire competency of courts of law to protect the rights of an assignee, against any collusion by the assignor, is perfectly well established; and nothing is suggested in this bill, which throws or is likely to throw any obstacle or embarrassment in the way of the complainants, in a court of law, in testing the liability of the makers of the bond. It was suggested indeed, upon the argument, as noticed in the opinion of the vice chancellor, that no breach could be shown in an action at law. But if that is the case, it is in itself a sufficient reason why this court should not entertain the bill. The defendants cannot be deprived of a legal defence by changing the forum; more especially in the case of a surety, will a court of equity refuse to extend or enlarge his legal liability.

If the court, under the circumstances of this case, will take cognizance of the alleged rights of the complainants, we say that the complainants have failed to show any breach of the condition of the bond set out in their bill. It is necessary, in discussing this point, to look particularly at the character of this bond; for it will be seen on reference to the bill, that the breach relied upon is a supposed injury resulting to the com-

plainants, and not any direct damage to Hutchinson. The bond is strictly a bond of indemnity to Hutchinson, and for no other purpose. The condition must have the same construction in courts of law and of equity. The rules of interpretation in both courts are the same. (3 *Black. Com.* 434.) Neither court can vary the wills or agreements of men, or make wills or agreements for them. Both courts are to construe them truly, and therefore both will construe them uniformly. One court ought not to extend, nor the other to abridge, a lawful provision, deliberately settled by the parties, contrary to its just intent. Both courts will equitably construe, but neither can control or change, a lawful engagement. (*Idem*, 435.) If then equity follows the law in a case of this kind, and gives the same construction to the instrument, upon what ground can it be pretended that damage resulting to the complainants, and not to Hutchinson, works a forfeiture of the bond? Protection to Hutchinson personally, from any injury to result from the mortgage, was only stipulated for, not protection to his assigns, or to any person who shall thereafter have an interest in the mortgaged premises. The complainants, as Hutchinson's assignees, are entitled to receive the amount of such damages as he has sustained, and nothing more; and to recover any thing, they must show that he has sustained an injury. Will it be pretended that this bond has the qualities of a covenant running with the land, so as to entitle the complainants, as the assignees of the land, to recover for damages which they have sustained as owners of the second mortgage? If so, it takes away the only shadow of an excuse which the complainants have for coming into this court. They may bring an action at law in their own names. There are also two or three answers to any such suggestion. There was not, at the time this bond was executed, and there never has been, any privity of estate between Hutchinson and this defendant; which is essential to the creation of a covenant which shall run with the land. (*Platt on Cov.* 460.) Again; the condition has no connection with the land, and does not enlarge, abridge, or affect Hutchinson's enjoyment of it. It is not a covenant to pay

off the mortgage: it is not to procure a release of the mortgaged premises: it is simply a personal covenant to indemnify Hutchinson against the mortgage. So long as he sustains no injury it is no matter what becomes of the land, or of the incumbrance upon it. But again; suppose it should be construed as a covenant running with the land, the complainants are not in a situation to avail themselves of it, in any court, so far as to recover for an injury to themselves, and not to Hutchinson. By their own showing they are simply mortgagees, and were never in possession of the mortgaged premises. While they held their mortgage from Hutchinson, and previous to any foreclosure thereof, the prior mortgage was foreclosed, and the mortgaged premises were sold and conveyed to B. Gibson; who entered into possession and still occupies the same. The subsequent foreclosure and sale, by the complainants, was a mere nullity; which gave no title, and conferred no possession, or right of possession. That a mortgagee out of possession is not an assignee of the land, so as to avail himself of a covenant running with the land, is perfectly well established in this state, though the English rule is now different. (*Astor* v. *Hoyt*, 5 *Wend.* 603. *Walton* v. *Cronly*, 14 *id.* 63.)

The bill in this cause does not allege any damage to Hutchinson, which would have entitled him to relief thereon, if no assignment had been made. The force and effect of a bond of indemnity has been fully and repeatedly settled in our courts of law; and we have no difficulty in deciding, upon authority, what constitutes a breach of the condition. The rule is, that, upon a mere bond of indemnity, the plaintiff must show actual damages, before he can recover, though where the indemnity is coupled with a covenant to do certain acts, or to pay certain sums of money, it is otherwise. (*Van Slyck* v. *Kimball*, 8 *John. Rep.* 198. *Douglas* v. *Clark*, 14 *Id.* 177. *Jackson* v. *Post*, 17 *Id.* 482. *Matter of Myers*, 7 *Wend.* 499. *Luddington* v. *Pulver*, 6 *Id.* 404. *Chase* v. *Hinman*, 8 *Id.* 452. *Ward* v. *Fryer*, 19 *Id.* 494. *Thomas* v. *Allen*, 1 *Hill*, 145.) Here the bond being a bond of indemnity merely, Hutchinson would be bound to show that he had been compelled to pay money

The Ontario Bank *v.* Mumford.

upon the mortgage mentioned in the condition, or that he had been evicted under that mortgage, before he could recover. The case of *Van Slyck* v. *Kimball,* above cited, is much like the present. There the defendant executed a bond to the plaintiff, conditioned to indemnify him against all demands, dues and damages whatsoever which might happen or arise under a certain mortgage. The plaintiff's land, which was encumbered by that mortgage, was sold under it; and his title was defeated. But when he brought his action, the court said that such a covenant of indemnity, was tantamount to a covenant for quiet enjoyment against the mortgagee; and that the plaintiff, to sustain his action, must show an eviction under the mortgage. Here there is not only an absence of any averment in the bill that Hutchinson paid any money upon the mortgage, or was evicted under it; but the case made by the bill shows directly the contrary. The land was sold upon a foreclosure of the mortgage, in December, 1842, it is true. But Hutchinson had parted with all his interest long before that time. If he had not previously disposed of it, it passed to his assignee in bankruptcy in May, 1842. All Hutchinson's interest was gone; and he had, for aught that appears, received its full value. He suffered nothing by the sale. It was no part of the condition of the bond that the land should sell for enough to pay the complainants' mortgage; and whether it did or did not, is immaterial, so long as Hutchinson sustained no loss from the prior mortgage.

If, then, we are right in assuming that the courts of law and equity construe the same instrument in the same way, it seems impossible to sustain this bill. And we are carefully to distinguish this case from a class of cases where this court will grant relief upon instruments which are unavailable at law. Such, for instance, as reforming an agreement which by accident or mistake, does not conform to the clear intention of the parties; giving relief upon a bond, burnt or cancelled by mistake or accident; carrying into effect contracts, between husband and wife, void at law by reason of the marriage. These proceed upon the ground of carrying out and fulfilling the intention of the parties to the agreement. But when the contract is perfect

in itself, and no surprise, fraud, accident or mistake is shown, neither this court nor any other can alter or enlarge the terms of the agreement. The court has no right to infer that a party intended to bind himself beyond the terms of the engagement he has thought fit to enter into. Otherwise the court would depart from its province of interpreting contracts, and would be making them for the parties. It may well be, judging from the recitals in the condition of the bond, that E. H. S. Mumford, the principal, contemplated paying off or otherwise discharging the lien of the mortgage, therein mentioned, upon the premises conveyed to Hutchinson; but is it thence to be inferred, that the surety intended to make himself liable for something not provided for in the terms of his engagement? I think not. The inference is the other way. The bond, if executed by E. H. S. Mumford alone, would naturally have provided for the payment of the Prime mortgage. But when the surety was to be bound he had a right to say, and it is to be inferred that he did say, that he would go no further than merely to indemnify Hutchinson personally.

There are some considerations growing out of the position of this defendant, as surety only, which give additional force to the views already expressed. It is well settled, as well at law as in equity, that sureties are not bound beyond the strict letter of their contract. ( *Wright* v. *Russell,* 3 *Wils. Rep.* 530. *Staton* v. *Rastall,* 2 *T. R.* 366. *Walsh* v. *Bailey,* 10 *John. Rep.* 180. *Dobbin* v. *Bradley,* 17 *Wend.* 422. *Wing* v. *Terry,* 5 *Hill,* 160. *Birkhead* v. *Brown, Id.* 634. *Bank of Utica* v. *Dill,* 1 *Paige,* 466.) And this, too, where the contract falls short of the intentions of the surety. In *Phelps* v. *Garrow,* (8 *Paige,* 322,) a surety endorsed a draft, for the express purpose of becoming security to the drawers for the amount. Yet not being liable at law, it was held that he could not be charged in equity. In *Simpson* v. *Field,* (2 *Chan. Cases,* 22,) the defendant, as surety, executed a recognizance, binding him to pay such sum of money as should be reported by N. H. a master. Before making a report, the master died. The chancellor, Ld. Clarendon, held that the remedy at law being

gone, no relief could be afforded in equity; for in case of a surety, the court of chancery would never extend or enlarge the legal liability which the surety had assumed. The same principle is decided in a variety of cases. (*Ratcliff* v. *Gram*, 1 *Vern*. 196. *Sheffield* v. *Castleton*, 2 *Id*. 393. *Sumner* v. *Powell*, 2 *Mer*. 30. *S. C. on appeal*, 1 *Tur. & Russ*. 423. *Waters* v. *Riley*, 2 *Har. & Gill*, 305. *Ludlow* v. *Simond*, 2 *Caine's Cases in Error*, 1.)

A few words in answer to the course of argument employed by the complainants' counsel, before the vice chancellor, will complete all I have to say. He cites a number of authorities to establish the proposition, that when a collateral security is given, for the payment of a debt, the creditor is entitled to that security, whether he contracts with reference to it, and with a knowledge of it, or otherwise. Against this principle, we have nothing to say—but we contend that it is wholly inapplicable here, for the purposes for which the counsel wishes to use it. In the first place, the collateral security must have been given to secure the identical debt; and all the cases cited by the counsel show that the ground upon which the courts proceed is that it is a trust for the protection of the debt itself. Now this bond of indemnity had no connection whatever with the debt of the complainants. It was given to Hutchinson long before his mortgage to them; and without any possible reference to it. The counsel supposes that at all events it was collateral security for the payment of the prior mortgage. Not so. It was not an obligation to pay off the Prime mortgage. It was a mere personal indemnity to Hutchinson; and Prime could never have enforced it, if the mortgaged premises had failed to satisfy his mortgage debt, unless by showing damage to Hutchinson. But the greatest difficulty is yet behind. Suppose this bond to be a security which the complainants are entitled to reach. Their right to it cannot affect the construction of the bond—they cannot collect it before it is due. It cannot have one character in Hutchinson's hands, and another in the hands of the complainants. They have already reached it by virtue of Hutchinson's assignment. They have no neces-

sity to come into this court to entitle themselves to it. Suppose it were a promissory note, given expressly to secure the payment of the complainants' debt: would the cases cited by the counsel be any authority for the complainants coming into this court to collect it? The complainants have the bond, but have they cited a single case showing that the condition is to be construed in the manner claimed by them? Not one. In whatever way they are to reach it, they must show a breach of the condition, before they can claim any benefit from it.

No argument can be derived from the consideration of the question, whether the bond, in its present shape, can be made to answer all the purposes which Hutchinson contemplated, or not. He was content to take it as it is; and it is to be presumed that all the embarrassments of his title were taken into consideration by him, and affected the price paid by him for the land. At any rate, neither he nor his assignees can ask to alter or enlarge the obligation which the parties to the bond agreed to take upon themselves.

THE CHANCELLOR. If a correct copy of the condition of the bond is set out in the bill furnished me, a mistake has occurred by inserting the word *not* in such condition; so as to make the bond *void* if E. H. S. Mumford should *not* indemnify the obligee against the mortgage, which was then a lien upon the premises. As G. H. Mumford was merely a surety in the bond, if the proper construction of the language of the instrument itself does not make him responsible for the neglect of his principal to indemnify the obligee, the bond cannot be reformed, so as to render him liable, even if it was his intention to bind himself at the time the bond was executed. For the statute of frauds requires an agreement in writing, to bind a surety. And if the surety has not already executed a valid agreement to answer for the debt or default of his principal, this court cannot compel him to execute such an agreement; upon the ground that he has attempted to do so, but has failed of accomplishing his object, by mistake or inadvertence. Whether the whole of this bond with its condition, when taken together,

show the intention of the surety to agree and bind himself that his co-obligor should indemnify Hutchinson against all loss on account of the mortgage, so as to render the bond a good and available security at the time it was taken, is a question not necessary to be considered ; as I am satisfied the complainant must fail on another ground. In discussing other questions in the cause, therefore, I shall proceed upon the supposition that this is a bond to indemnify Hutchinson against the incumbrance of the mortgage, which was a lien upon the premises at the time of the conveyance to him, and to save him harmless from any damage which should be sustained by him, from the neglect of his grantor to pay off or procure a discharge of the mortgage ; as the condition of the bond states he had agreed to do.

The foreclosure suits were both commenced before the institution of the proceedings in bankruptcy ; but the decrees were made subsequent to the vesting of the equity of redemption in Smith the assignee, by operation of law, if that equity of redemption was in Hutchinson when he was decreed a bankrupt. And to render the proceedings in the foreclosure suits regular, and to give a perfect title to the purchasers under the decrees of foreclosure, the assignee in bankruptcy should have been brought before the court as a party. Whether that was done in either of the foreclosure suits mentioned in the complainant's bill does not appear. But upon the supposition that the bank has exhausted its remedy against the mortgaged premises, and that the sale under the decree upon the first mortgage exhausted the fund, which would have been appropriated to the payment of the bond and mortgage to the bank, if E. H. S. Mumford had paid off that prior mortgage, I think the complainant's bill shows a palpable breach of the condition of the bond. It also shows that by the neglect of the obligors to indemnify and save him harmless from the prior mortgage, Hutchinson sustained damage to the amount of the deficiency, which he was decreed to pay to the complainant ; even if the value of the premises conveyed to him, by Mumford, did not exceed the

amount of the mortgage to the bank at the time of the sale of such premises under the decree upon the prior mortgage.

It remains to be considered whether there is any thing stated in the complainant's bill which is sufficient to authorize the court of chancery to take jurisdiction of this case ; instead of leaving the bank, as the assignee of the bond, to seek its remedy by an action at law against the obligors in such bond. As a general rule this court will not entertain a suit brought by the assignee of a debt, or of a chose in action, which is a mere legal demand ; but will leave him to his remedy at law, by a suit in the name of the assignor. (*Carter* v. *United Insurance Company*, 1 *John. Ch. Rep.* 463. *Hammond* v. *Messenger*, 9 *Sim. Rep.* 327. *Moseley* v. *Boush*, 4 *Rand. Rep.* 392. *Adair* v. *Winchester*, 7 *Gill & John. Rep.* 114. *Smiley* v. *Bell*, *Mart. & Yerg. Rep.* 378.) Where, however, special circumstances render it necessary for the assignee to come into a court of equity for relief, to prevent a failure of justice, he will be allowed to bring a suit here upon a mere legal demand. Thus, in the case of *Lenox* v. *Roberts*, (2 *Wheat. Rep.* 373,) where the first Bank of the United States, previous to the expiration of its charter, had made an assignment of a debt, the late Chief Justice Marshall decided that the assignees could file a bill in equity, in their own names, for the recovery of such debt ; they not having the power to sue at law in the name of the defunct corporation. Here no provision is made, by law, authorizing the assignee of a chose in action, to sue in the name of the assignees in bankruptcy of his assignor, without their consent. And the bill of the complainant contains an express averment, that the assignee in bankruptcy of Hutchinson refused to join in a suit for the recovery of the damage consequent upon the breach of the condition of the bond in question. I should, therefore, have no doubt as to the jurisdiction of the court of chancery, in the present case, if it was necessary for the complainant to bring an action at law in the name of the assignee in bankruptcy, as well as in the name of Hutchinson, the assignor; or to bring it in the name of the assignee in bankruptcy alone.

Where a debt is due to two persons jointly, and one of them is decreed to be a bankrupt, or makes an assignment under the insolvent acts, the action for the recovery of the debt, in a court of law, must be brought in the names of the other creditor and of the assignees jointly; and neither can sue in his own name alone. Nor can the suit be brought in the joint names of the original creditors, in such a case, except where the bankrupt was a mere nominal owner of the debt, as trustee or otherwise. (*Bird et al.* v. *Caritat*, 2 *John. Rep.* 342. *Eckhart* v. *Wilson*, 8 *Term Rep.* 140. *Broom on Part.* 91.) But as early as 1743, Lord Chief Justice Willes had a *notion* that the assignees in bankruptcy did not take the whole legal title in the bankrupt's property, as heirs and executors did; and that nothing vested in the assignees, even at law, but such estate as the bankrupt had the beneficial, as well as the legal, interest in, and which was to be applied by the assignees for the payment of the debts of the bankrupt. But as his associates upon the bench were not prepared to put the decision of the case then under consideration upon that ground, the point was left undecided. (*Scott* v. *Surman*, *Willes' Rep.* 400.) That *notion* of this learned and distinguished jurist, however, was subsequently followed, and has long since become the settled law, not only in England, but in this state. In *Webster and others* v. *Scales*, (4 *Doug. Rep.* 7,) which case came before the court of king's bench about forty years afterwards, the bankrupt was one of several trustees, to whom an assignment had been made, for the payment of the creditors of the assignor, of whom the bankrupt was one at the time of such assignment in trust. And Lord Mansfield held, that a suit upon a bond given to such trustees, was properly brought in the name of the bankrupt and the other trustees; although the bankrupt had a beneficial interest in the trust fund, which had passed to his assignee in bankruptcy. Thereby deciding that a bankrupt trustee may sue as trustee for the benefit of his assignees in bankruptcy and others, when he has a beneficial interest as one of the cestuis que trust, in the instrument upon which the suit is brought, at the time he became a bankrupt. That deci-

The Ontario Bank *v.* Mumford.

sion goes very far towards establishing the right of the complainant, in the case now under consideration, to sue, at law, in the name of Hutchinson, the obligee in the bond, even if the damage sustained by the breach of the condition of the bond was more than the amount of the deficiency due to the complainant; so as to give the assignee in bankruptcy an interest therein as such assignee. There is nothing in the complainant's bill, however, to show that the assignee in bankruptcy took any beneficial interest whatever in the bond of indemnity, which had been previously assigned to the complainant, as a part of the security for the payment of the bank debt. And as the amount of the deficiency upon the foreclosure of the complainant's mortgage, was considerably larger than the prior mortgage, I do not see how any one can infer that the assignees in bankruptcy can ever have any beneficial interest in the recovery which may be had upon the bond. Nor does the fact that the assignment of the bond, and the damages to be recovered thereon, in the name of Hutchinson, was not absolute and unconditional, but merely as a collateral security, make any difference as to the right to sue in the name of Hutchinson alone. This was decided in the case of *Winch* v. *Kelly*, (1 *Term Rep.* 619,) which came before the court of king's bench in 1787. There the debt, for which the suit was brought, was assigned by the bankrupt previous to his bankruptcy, as a security for the payment of a debt merely, with a condition that the assignment should be void if the debt was paid, at the time specified. And yet, the debt not having been paid, the court decided that the action for the recovery of the assigned debt was properly brought, by the assignee thereof, in the name of the bankrupt. For the previous assignment constituted the bankrupt a trustee of the mere legal right to bring the action; which action the cestui que trust had the right to bring in his name.

In *Carpenter* v. *Marnell*, (3 *Bos. & Pul.* 40,) it was again decided that the action in such a case must be brought in the name of the bankrupt, and that it could not be sustained if brought in the names of the assignees in bankruptcy. The decisions in our own courts also are in accordance with the

principles settled in the cases referred to from the English reports. (*See Kipp* v. *The Bank of New-York*, 10 *John. Rep.* 63; *Hopkins* v. *Banks*, 7 *Cowen's Rep.* 650.) The vice chancellor was therefore right in supposing that the remedy of the complainant, if any, was by an action at law in the name of Hutchinson. And even if Hutchinson was dead, there would be no reason for coming into this court for relief. For the suit might then be brought in the name of the bank, under the provision of the statute on the subject, if there was no personal representative of the decedent, or such representative refused to sue for the damage sustained by a breach of the condition of the bond. (2 *R. S.* 445, § 5, 3*d ed.*)

The decree appealed from must therefore be affirmed with costs.