JOSEPH H. WALKER & another *vs.* JAMES W. BROOKS & another.

Worcester. Oct. 5, 1877. — Aug. 31, 1878. ENDICOTT & LORD, JJ., absent.

A court of equity will not entertain a bill by the assignee of a strictly legal right, merely upon the ground that he cannot bring an action at law in his own name, nor unless it appears that the assignor prohibits and prevents such an action from being brought in his name, or that an action so brought would not afford the assignee an adequate remedy.

A bill in equity, by A. and B., copartners, against C. and D., alleged that D. executed to A. and B. a license to use a patented machine, for which they were to pay him certain license fees on rendering true monthly accounts; that at the same time D. made an agreement with A. to pay him for his services, (which he performed,) in introducing the machine to the public, a sum equal to such license fees; that D. had assigned his rights in the license and agreement to C., and A. had assigned his rights under the agreement to A. and B. as copartners; that A. and B. had used the machine, duly rendered accounts to C. and D., paid them therefor a certain sum, and owed and were ready to pay to C. a further sum therefor; that a like sum was due from C. to A. and B.; that A. and B. had demanded of C. that he should pay to them the sum so paid by them, and should set off such further sum due to him against the sum so in equity due to them from him; and that C. wholly refused to do so, and threatened to sue them for the further sum due and to set aside and avoid the lease and license, and to seize upon and take possession of the leased machine. The prayer of the bill was for a discovery under oath; for an account of all sums due from A. and B. to C. and D. or either of them, and from C. and D. or either of them to A. and B.; for a set-off of such sums against each other; for an injunction against bringing any suit against A. and B. on account of any claim against them as above stated; and for further relief. *Held,* on demurrer, that the bill could not be maintained, either on the ground of set-off, or for an account, or for relief against forfeiture, or to reach, under the Gen. Sts. c. 113, § 2, property not attachable at law, or for discovery.

GRAY, C. J. This bill was filed May 21, 1877, by Joseph H. Walker and George M. Walker, copartners, against James W. Brooks and Horace H. Bigelow. The material allegations of the bill are as follows:

1st. That on March 21, 1872, the defendant Bigelow executed to the two plaintiffs a lease of and license to use a certain patented machine for compressing heels for boots and shoes, for which the plaintiffs were to pay him a royalty of ten cents, or, in case of their rendering true accounts to him monthly, the sum of one half cent, for each pair of heels thereby compressed.

2d. That, at the same date, Bigelow entered into an agree-
ment with Joseph H. Walker, one of the plaintiffs, to pay him
monthly for certain services in introducing the machine to the
public (which he afterwards performed) sums equal to those to
be paid by the plaintiffs to Bigelow under the lease and license
from him.

3d. That Bigelow has assigned each of these contracts to the
other defendant Brooks, who has become in equity entitled to all
the advantages thereof and to receive all sums of money due or
to become due from the plaintiffs under the same, and has be-
come in equity bound to perform all the obligations expressed or
implied therein to be performed by Bigelow.

4th. That all the rights and obligations of Joseph H. Walker,
under his agreement with Bigelow, have been assigned to and
vested in the plaintiffs, and they are in equity entitled to receive
all sums which are or may become due under the same.

5th. That the plaintiffs, under the lease and license to them,
have used the patented machine, and have duly kept and ren-
dered accounts to the defendants, and have paid to them in full
for such lease and use to February 1, 1877, the sum of $3000,
and now owe and are ready to pay to the defendant Brooks a
further sum of $164.75 for such use since that time.

6th. That there is due a like sum from Brooks to the plain-
tiffs, and that they have demanded of him that he should pay to
them the sum so paid by them, and should set off the sum so
due from them as rent as aforesaid against the sum so in equity
due to them from him ; and that he has wholly refused to do so,
and threatens to sue them for this sum, and to set aside and
avoid the lease and license, and to seize upon and take possession
of the leased machines, alleging that the plaintiffs have not per-
formed the stipulations and conditions thereof on their part.

7th. That the plaintiffs have fully performed the same, and
are ready and offer to do so hereafter, except that they insist
and aver that in equity they are entitled to have the sums due
as aforesaid, from either of the parties to the other, set off, and
that such right to a set-off operates as an extinguishment and
payment of those sums.

The prayer of the bill is for a discovery under oath ; for an
account of all sums due from the plaintiffs to the defendants or

either of them, and from the defendants or either of them to the plaintiffs; for a set-off of such sums against each other; for an injunction against bringing any suit against the plaintiffs on account of any claim against them as above stated; and for further relief.

To this bill the defendants have demurred, because the plaintiffs have a plain, adequate and complete remedy at law, and because they have not stated such a case as entitles them to any discovery or relief in equity. We are of opinion that the demurrer is well taken, and that the bill cannot be sustained on any of the grounds assigned by the learned counsel for the plaintiffs.

It is attempted, in the first place, to bring the case within the rule, that where there are cross demands between the parties of such a nature that if both were recoverable at law they would be the subject of a set-off, then, if either of them is a matter of equitable jurisdiction, the set-off may be enforced in equity. It is said that the defendant Brooks, as the assignee of the claim of the other defendant Bigelow against the plaintiffs, has an equitable right of action against the plaintiffs, which, though at law it could only be sued in the name of Bigelow, might in equity be sued by Brooks; and that such right of Brooks to sue the plaintiffs in equity affords a foundation for jurisdiction in equity to order a set-off of that equitable right against the plaintiffs' claim.

But a court of equity will not entertain a bill by the assignee of a strictly legal right, merely upon the ground that he cannot bring an action at law in his own name, nor unless it appears that the assignor prohibits and prevents such an action from being brought in his name, or that an action so brought would not afford the assignee an adequate remedy.

In *Hammond* v. *Messenger*, 9 Sim. 327, 332, Vice Chancellor Shadwell so held, and said, "If this case were stripped of all special circumstances, it would be simply a bill filed by a plaintiff who had obtained, from certain persons to whom a debt was due, a right to sue in their names for the debt. It is quite new to me that, in such a simple case as that, this court allows, in the first instance, a bill to be filed against the debtor by the person who has become the assignee of the debt. I admit that,

if special circumstances are stated, and it is represented that, notwithstanding the right which the party has obtained to sue in the name of the creditor, the creditor will interfere and prevent the exercise of that right, this court will interpose for the purpose of preventing that species of wrong being done; and, if the creditor will not allow the matter to be tried at law in his name, this court has a jurisdiction, in the first instance, to compel the debtor to pay the debt to the plaintiff; especially in a case where the act done by the creditor is done in collusion with the debtor. If bills of this kind were allowable, it is obvious that they would be pretty frequent; but I never remember any instance of such a bill as this being filed, unaccompanied by special circumstances."

It is true that Mr. Justice Story, in his Commentaries, observed upon that opinion, "This doctrine is apparently new, at least in the broad extent in which it is laid down; and does not seem to have been generally adopted in America. On the contrary, the more general principle established in this country seems to be, that wherever an assignee has an equitable right or interest in a debt or other property (as the assignee of a debt certainly has) there a court of equity is the proper forum to enforce it; and he is not to be driven to any circuity by instituting a suit at law in the name of the person who is possessed of the legal title. A *cestui que trust* may ordinarily sue third persons in a court of equity, upon his equitable title, without any reference to the existence of a legal title in his trustee, which may be enforced at law." Story Eq. Jur. § 1057 *a*. To the same effect is the statement in Story Eq. Pl. § 153.

But the adjudged cases, including those cited by the learned commentator, upon being examined, fail to support his position, and show that the doctrine of *Hammond* v. *Messenger* is amply sustained by earlier authorities in England and in this country.

A century and a half ago, parties for whose benefit their agent had obtained policies of insurance in his own name, brought bills in equity against the underwriters. But Lord Chancellor King refused to sustain them, saying, " At this rate, all policies of insurance would be tried in this court, for they are generally taken in the name of a trustee; " and again, " If I should give way to this attempt, no action would ever be brought on a

policy." And his decision was affirmed in the House of Lords. *Dhegetoft* v *London Assurance Co.* Mosely, 83, and 4 Bro. P. C. (2d. ed.) 436. *Fall* v. *Chambers*, Mosely, 193. Lord Hardwicke afterwards expressed a like opinion. *Motteux* v. *London Assurance Co.* 1 Atk. 545, 547.

In *Cator* v. *Burke*, 1 Bro. Ch. 434, Cator, with whom Hargrave had deposited, as security for a debt of his own to Cator, a bond made by Burke to Hargrave, filed a bill in equity against Burke and Hargrave, to compel Burke to pay the debt to the plaintiff, out of a counter bond for a larger amount, which Hargrave had made to Burke; and to prevent Burke from setting up the counter bond as a defence to any action at law which might be brought against him in the name of Hargrave. The bill was dismissed; Lord Loughborough saying, " The bond can never be considered in any other light than as an unassignable security; to consider it otherwise would bring all the causes on bonds in Westminster Hall into this court. The plaintiff has mistaken both the law and equity; for first, he has supposed that the holder of a bond might, where there was no discovery to be made, come hither, and have a different relief from what he could have at law; and secondly, that if there was fraud in giving the counter bond, it could not be made use of at law. When this bill is dismissed with costs, you may bring your action in the name of Hargrave. If this bill would lie by the simple act of assigning the bond, a suit in equity might be brought on every bond that is given." So in *Rose* v. *Clarke*, 1 Yo. & Col. Ch. 534, 548, Vice Chancellor Knight Bruce said, " As I apprehend, an equitable title to money secured by a bond is not of itself sufficient to entitle the party so interested to sue the obligor in equity for payment of the money. There must, I conceive, be something more."

The decision in *Riddle* v. *Mandeville*, 5 Cranch, 322, allowing an indorsee of a promissory note to sustain a bill in equity against a remote indorser, proceeded upon the ground that in Virginia no remedy at law could be had against him, except by the circuitous course of successive actions by each indorsee against his immediate indorser and that in that particular case the intermediate party was insolvent. See *Mandeville* v. *Riddle*, 1 Cranch, 290; *Harris* v. *Johnston*, 3 Cranch, 311. That Chief

Justice Marshall, who delivered the opinions in these cases, did not consider them as establishing the general proposition that the assignee of a chose in action, who could not sue thereon in his own name at law, might therefore do so in equity, is manifest from his opinion in the later case of *Lenox* v. *Roberts*, 2 Wheat. 373, in which the assignee of all the property of a banking corporation was allowed to maintain a bill in equity in his own name upon a promissory note which had not been formally indorsed to him, for the reason that, " as the act of incorporation had expired, no action could be maintained at law by the bank itself."

In *Carter* v. *United Ins. Co.* 1 Johns. Ch. 463, Chancellor Kent dismissed a bill in equity brought against an insurance company by the assignees of a policy of insurance; and briefly stated his reasons to be, that the demand was properly cognizable at law, and there was no good reason for coming into the court of chancery to recover on the contract of insurance; that the plaintiffs were entitled to make use of the names of the original assured in the suit at law, and the nominal plaintiffs would not be permitted to defeat or prejudice the right of action; that it might be said here, as was said by the Chancellor in the analogous case of *Dhegetoft* v. *London Assurance Co.* above referred to, that at this rate all policies of insurance would be tried in this court; and that the bill stated no special ground for equitable relief.

It was held by the Courts of Appeals of Maryland and Virginia, and by the Supreme Court of Tennessee in an opinion delivered by Judge Catron, (afterwards a justice of the Supreme Court of the United States,) that the mere fact of the assignment of a legal chose in action gave the assignee no right to invoke the jurisdiction of a court of equity. *Adair* v. *Winchester*, 7 Gill & Johns. 114. *Moseley* v. *Boush*, 4 Rand. 392. *Smiley* v. *Bell*, Mart. & Yerg. 378. The opposing decision in *Townsend* v. *Carpenter*, 11 Ohio, 21, is unsupported by any reference to authorities.

The cases before Chancellor Walworth, of *Field* v. *Maghee*, 5 Paige, 539, and *Rogers* v. *Trader's Ins. Co.* 6 Paige, 583, contain no decision upon this point; and in the later case of *Ontario Bank* v. *Mumford*, 2 Barb. Ch. 596, 615, he said, " As a general

rule, this court will not entertain a suit brought by the assignee of a debt or of a chose in action, which is a mere legal demand, but will leave him to his remedy at law by a suit in the name of the assignor ; " and referred to the cases before Chancellor Kent and Vice Chancellor Shadwell, and in the courts of Maryland, Virginia and Tennessee, already cited.

The statement in Story Eq. Jur. § 1436 *a,* that " if a legal debt is due to the plaintiff by the defendant, and the defendant is the assignee of a legal debt due to a third person from the plaintiff, which has been duly assigned to himself, a court of equity will set off the one against the other, if both debts could properly be the subject of a set-off at law," is pervaded by the same error that we have considered.

The decision of the Vice Chancellor in *Williams* v. *Davies,* 2 Sim. 461, by which a creditor appears to have been restrained in equity from taking judgment and execution at law on a debt of one to whom he owed a larger sum, is obscurely reported, and was disapproved by Lord Chancellor Cottenham. *Clark* v. *Cort,* Cr. & Phil. 154, 159. *Rawson* v. *Samuel,* Cr. & Phil. 161, 178. In *Clark* v. *Cort,* the bill upon which the set-off was ordered was by the assignees of a claim which required the investigation of accounts and the application of a security, of which the court would have had jurisdiction if the suit had been by the assignor; and the Chancellor said, " The case, then, is not that of a mere assignee of a legal debt, coming into equity to have the benefit of a set-off which he could not have at law." In *Rawson* v. *Samuel,* he observed, " We speak familiarly of equitable set-off, as distinguished from the set-off at law ; but it will be found that this equitable set-off exists in cases where the party seeking the benefit of it can show some equitable ground for being protected against his adversary's demand. The mere existence of cross demands is not sufficient." And see *Watson* v. *Mid Wales Railway,* L. R. 2 C. P. 593; *Spaulding* v. *Backus,* 122 Mass. 553.

In this Commonwealth, the assignee of a chose in action has an adequate and complete remedy at law, in the right to maintain an action thereon in the name of his assignor, or of his executor or administrator, without his consent, and even against his protest, at least upon giving him, if seasonably demanded, a

bond of indemnity against costs. *Dennis* v. *Twitchell*, 10 Met. 180, 184. *Rockwood* v. *Brown*, 1 Gray, 261. *Bates* v. *Kempton*, 7 Gray, 382. *Foss* v. *Lowell Savings Bank*, 111 Mass. 285. In any action at law, brought by Brooks in the name of Bigelow, to recover the sums due him from these two plaintiffs under the license, they could set off the demand, under the other contract assigned to them, of Joseph H. Walker against Bigelow, if Bigelow had notice of such assignment before bringing his action. Gen. Sts. *c.* 130, § 5. *Cook* v. *Mills*, 5 Allen, 36, 38. Their neglect to give such notice cannot entitle them to demand the interposition of a court of equity. *Wolcott* v. *Jones*, 4 Allen, 367.

The bill shows no case for an account that cannot be taken at law. *Badger* v. *McNamara*, 123 Mass. 117. It cannot be maintained to restrain a forfeiture ; because it does not show that here is any danger of irreparable injury, therein differing from *Florence Sewing Machine Co.* v. *Grover & Baker Sewing Machine Co.* 110 Mass. 1. It cannot be maintained under the Gen. Sts. *c.* 113, § 2, to reach and apply, in payment of a debt, property or rights of a debtor which cannot be come at to be attached or taken on execution in a suit at law against him ; because it is not framed in that aspect, and because the statute relates to rights of property, or claims of the debtor against third persons, and does not extend to claims of the debtor against the plaintiff himself. *Crompton* v. *Anthony*, 13 Allen, 33, 37. It cannot be maintained for discovery ; because it cannot be maintained for relief, and does not show that any discovery is required in aid of proceedings at law. *Pool* v. *Lloyd*, 5 Met. 525. *Ahrend* v. *Odiorne*, 118 Mass. 261.

*Demurrer sustained, and bill dismissed.*

*J. J. Storrow*, for the defendants.

*G. F. Hoar*, (*F. T. Blackmer* with him,) for the plaintiffs.