HENRY C. BLISS & another, receivers, *vs.* ROBERT W. PARKS & others.

SAME *vs.* F. E. LITCHFIELD & others.

SAME *vs.* JOHN R. REED & others.

Hampden.    December 12, 1899. — March 6, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Equity — Multifariousness — Allegation that Officers of Corporation mismanaged it for Personal Gain, Ground for Equitable Relief — Argumentative Allegations — Discovery.*

The objection that a bill in equity is multifarious is one upon which there is no inflexible rule, and the question whether the objection shall be sustained must be determined largely by the circumstances of the particular case; and in this case all the matters charged are so related to the general ground of complaint that the objection cannot be sustained.

The general ground of complaint in a bill in equity by the receivers of a corporation that the defendants, as officers in charge of the business of the corporation, mismanaged it for their personal gain, is a ground for equitable relief.

While there are in this bill in equity, by the receivers of a corporation, some matters which are pleaded argumentatively and are not plainly and directly charged, as, for instance, some statements that officers of the association, and the defendants "conspiring to defraud," or "conspiring to appropriate unlawfully," or "further conspiring to defraud," did certain acts, in the main the allegations are plain and direct, and are not open to the objection that they are argu-

mentatively stated; and this ground of demurrer being addressed to the bill as a whole is unsound and must be overruled.

A demurrer to a bill in equity on the ground that it seeks discovery of matters within the knowledge of the plaintiff must be overruled, if it does not appear from the bill that the matters concerning which discovery is sought are within the knowledge of the plaintiff.

THREE BILLS IN EQUITY, by the receivers against the officers and agents of the Bay State Beneficiary Association. The prayers were for discovery, for an accounting, for the payment to the receivers of all moneys in excess of reasonable compensation and expenses, for answering for damages sustained by the corporation, and for general relief. The defendants demurred to the bills, assigning various grounds therefor stated in the opinion. Hearing before *Knowlton*, J., who reserved the cases on the bills and demurrers for the consideration of the full court. The facts appear in the opinion.

*H. C. Bliss, pro se.*

*J. R. Dunbar*, (*A. F. Lilley* with him,) for Parks.

*A. Hemenway*, ( *W. S. Pinkham* with him,) for the defendants in the second case.

*A. S. Kneil*, for Reed, submitted the case on a brief.

BARKER, J. These are bills in equity inserted in writs of attachment sued out of this court on August 4, 1898.

The plaintiffs are receivers of the Bay State Beneficiary Association, appointed by a decree of this court entered on November 19, 1897, in proceedings brought by the Attorney General at the relation of the insurance commissioner. The power to prosecute in their own names suits to convert into cash the property and effects of the association which are in action, is given to them by the decree appointing the receivers. *Wilson* v. *Welch*, 157 Mass. 77, 80.

The association was incorporated under the laws of Massachusetts on June 2, 1881, for the purpose "of rendering pecuniary aid to the families of deceased members or to their heirs or assigns." From the time of its incorporation until proceedings were instituted against it by the Attorney General, the association transacted a benefit assessment insurance business, issuing benefit certificates, and receiving from certificate holders money for admission fees, annual dues, and mortuary assessments.

Annexed to the bills are copies of the certificate of incorpora-

tion, of the original by-laws of June 2, 1881, and of the by-laws as amended on January 13, 1892.

Speaking generally, the contention of the receivers is that the defendants were officers and agents of the association entrusted with its property and managing its business; and that in the discharge of this trust, they have applied the money of the association to their own private use.

In a sense the bills are alike, each recounting in the same language the course of the association, from the time of its incorporation, and alleging in the same terms a series of acts of officers and agents covering that period. The chief difference between the bills is that the first alleges that the defendants in the first suit were charged with the management, during the period from June 2, 1881, to January 20, 1893, while the second alleges that the defendants in that suit were charged with the management from January 20, 1893, to September 12, 1896, and the third charges that the defendants in the third suit had the management from September 12, 1896, to the time of the receivership in November, 1898.

There are four defendants in the first suit, each of whom was a person named in the certificate of incorporation as one of the persons who had associated themselves to form the corporation, and each of these defendants has filed a separate answer containing a demurrer.

In the second suit there are ten defendants, one of whom is a defendant in the first suit. Five of these defendants have filed separate answers, each containing a demurrer.

In the third suit there are six defendants, two of whom are defendants in the first suit, and one of those is also a defendant in the second suit. Four of these six defendants have filed separate answers, each containing a demurrer.

Each of these thirteen demurrers asserts that the bill to which it is directed is multifarious, and that it has no equity, and some of the demurrers also assert that the bill is argumentative, and also that it seeks a discovery of matters which are within the plaintiffs' own knowledge.

Each suit is reserved for the determination of the full court upon the amended bill in that case and the demurrers thereto.

1. All the demurrers take the ground that the bills are

multifarious, and "brought for distinct matters and causes, which do not affect all the defendants alike, and which are not so related to each other as to be properly joined in the same petition or bill of complaint."

Each bill alleges that during a certain period the defendants named in that bill, as officers and agents of the association, were charged as trustees with the management of its business and the custody of its funds, and that in the performance of their trust they have not acted in good faith, but have conducted the business for their own personal benefit or gain, and have not kept safely and accounted for the money and property of the corporation, but have diverted them to their own use. In the light of this statement, which is the general ground of relief alleged, the different matters charged in each bill are not distinct, but are logically related to each other and to the cause of complaint. Each of them is relevant either as proper matter of inducement, tending to give character to other acts charged, or as being breaches of trust committed, during the period charged, by the defendants in that bill, or as competent upon the question of the kind and amount of relief to be awarded against the defendants named in the suit for the breaches of trust committed by them during the period charged in the bill. The defendants in each suit stood together, during the period specified in the bill in that suit, as the persons who then had the management of the business and the custody of the property of the association. It is not oppressive to make them co-defendants in a suit for equitable relief for breaches of this trust committed during their period of control. If there had been but one suit, covering the whole time from the beginning to the end of the business, and all of the defendants in the three suits had been joined in such a single action, some of them might have claimed with more show of reason that the bill embraced matters for which no relief could be given as against them, and with which they had no such connection as to make it just that they should be kept in court while those matters were determined as against other defendants. Upon that question we express no opinion. The plaintiffs have joined as co-defendants, only those whom they allege to have been at the same time charged with the management and to have misused it together.

The objection that a bill is multifarious is one upon which there is no inflexible rule, and the question whether the objection shall be sustained, must be determined largely by the circumstances of the particular case. See *Robinson* v. *Guild*, 12 Met. 323, 328; *White* v. *Curtis*, 2 Gray, 467, 471; *Shields* v. *Thomas*, 18 How. 253. 1 Encyc. of Pl. & Pr. 195 *et seq.*

In the present cases, the plaintiffs seek to enforce a general right, with which the matters charged are connected, and to which the parties are so related that they cannot be said to be unduly burdened by being required to defend. There is no contention that the case is so complicated as to prevent the court from undertaking in it to administer justice between the parties.

2. The next ground, taken by all the demurrers, is for want of equity. This ground is stated generally, and must be overruled, if the bill to which it is addressed states any facts calling for equitable relief. *Dimmock* v. *Bixby*, 20 Pick. 368. The fact that each bill charges the defendants in the suit with the wrongful and fraudulent appropriation to their own use, in the administration of their trust as officers and agents of the association, of its property is enough to require the overruling of this ground of demurrer. *Parker* v. *Nickerson*, 112 Mass. 195; 137 Mass. 487. But it will, perhaps, be useful to go farther and to discuss the chief contention made in the argument of the demurrers by the defendants.

The fundamental dispute between the defendants and the plaintiffs is as to the status of the former with reference to the association. The contention of the defendants is that as original incorporators, and as the only associates and successors of those incorporators under the provisions of the amended by-laws, they alone are entitled to all the rights and property of the corporation; and that the certificate holders, or "benefit members," have no other interest in the association or its property than as holders of contracts of insurance. That even if those contracts have been broken by the defendants as officers of the association, the individual certificate holders alone can complain. In fine, that the plaintiffs as receivers have no standing, either to recover from the defendants money which, if as to the corporation it was improperly taken by them as officers, yet belonged to

themselves absolutely, or to recover from them money which if improperly taken or retained by them, would, if properly disposed of, have enured only to the individual benefit of those insured.

In support of this contention the defendants argue that the statutes under which the association was incorporated allowed the formation of companies which should prosecute a benevolent or charitable undertaking as a business, for the private and peculiar gain and profit of some particular class of members; and that they stand in such a relation to this association; and that they have a right to take and keep as their own property all property of the corporation not needed to fulfil its insurance contracts.

It is true that the statutes under which the association was incorporated contain provisions which contemplate that some corporations formed under them may engage in business, may have a capital stock divided into shares, and may divide profits among members. See St. 1857, c. 56, § 5; Gen. Sts. c. 32, § 5; St. 1874, c. 375.

Assuming, without so deciding, that the statutes would have authorized the seven men who procured the charter of the association to have procured themselves to be so incorporated that the association could transact the business of beneficiary assessment insurance for the sole profit of a distinct class of members, of which only the original incorporators and those persons whom they should choose to admit to that class should be members, and that such members should be alone entitled to control the corporation, and alone entitled to share in its assets after the fulfilment of its contracts, and alone have the power to choose officers and alter or amend by-laws, we are of the opinion that the defendants were never in any such relation to this association.

Nothing of the kind is said in the certificate of incorporation, or in the original by-laws. The only members who are spoken of, or provided for, in those by-laws, which with the certificate of incorporation are the constitution of the association, are certificate holders. There is no reservation to the incorporators of any right in, or control over, the corporation, and no article or provision which reserves to the incorporators as such, or as members of the corporation, any rights to control its business, or to

take its profits, or to continue to exist as a distinct part of the corporation, with rights in it or in its assets different from or greater than those of the other members. If the incorporators might have made by-laws securing to themselves as incorporators, or as a distinct class or body of members, the profits of the corporation, or the control of its business, they did not do so by the by-laws. It is true that the first board of officers was composed exclusively of men who were the original incorporators, and that directors and officers by the by-laws could be chosen only by those who were already officers. But though the officers had this power, they had it, not as incorporators, but as officers; and it was not a power which they had a right to use for their individual personal benefit or gain, but only for the good of the corporation. There is no provision in the original by-laws which reserves or secures to the incorporators, as such, any rights or privileges in the corporation, or any right to its profits, or control of its business or assets. When under those by-laws the corporation began the business of assessment insurance by taking in members and issuing to them certificates, the members so made had all the rights and powers which any persons had as members. The choice of officers was neither given to them, nor reserved to the incorporators. It was given to the officers as officers; and the fact that the officers came into the corporation originally by way of being the persons who got the charter was wholly immaterial. So, too, if the amended by-laws were valid, in attempting in 1893 to create a distinct class of active or corporate members, who should alone be eligible to office, and empowered to choose the officers, which we do not now decide, the new by-laws did not purport to give to this peculiar class or body of members as such any ownership of the assets or property of the corporation, or any right to its profits. If either set of the by-laws, rightly construed, purported to give to the officers and agents of the association all its profits, or all the surplus of any of its sources of income over certain expenditures, the by-laws did not purport to confer those rights upon the incorporators or the active members as such, but upon the officers as officers. None of the defendants can show, from either set of by-laws, any right to receive as his own any part of the corporate property as an incorporator or an active member.

Under the original by-laws, if all of certain sources of income not needed for what are called running expenses could be applied rightfully in the payment of the compensation of the services of the officers, it could only be so applied if necessary to give them a reasonable compensation. This is shown by the fact that those by-laws contemplated that some portion of the admission fees and the annual dues would be invested. But the same conclusion follows from the fact that the officers themselves were the only body who had the power to fix their own compensation, and as between themselves and the corporation they would be limited, necessarily, to giving themselves a just compensation only.

The same result follows from the amended by-laws. If the persons who adopted them were in fact the original incorporators, they adopted them not by virtue of any power reserved to themselves as incorporators, but as officers only, and bound as such to act for the good of the corporation, and not for their private gain. And under the new by-laws also, the persons in office, although incorporators or active members, in managing the business and dealing with the assets, and in paying themselves for their own services, acted simply as officers, and could not give rightfully to themselves more than a just compensation.

3. Some of the demurrers also say " that the petition is argumentative." The allegation is stated baldly, without specifying any particular part of the bill as open to the objection.. The demurrers, so far as they go upon this ground, cannot be sustained unless the whole bill is so permeated with this fault of pleading that it cannot fairly be construed to state in direct terms any facts which entitle the plaintiff's to equitable relief. While there are in these bills some matters which are pleaded argumentatively, and are not plainly and directly charged, as, for instance, some statements that officers of the association, and the defendants " conspiring to defraud," or " conspiring to appropriate unlawfully," or " further conspiring to defraud," did certain acts, in the main the allegations of the bills are plain and direct, and are not open to the objection that they are argumentatively stated. This ground of demurrer, being addressed to the bill as a whole, is unsound and must be overruled.

4. The remaining ground is that the bills seek discovery of

matters within the plaintiff's knowledge. But it does not appear from the bills that the matters concerning which discovery is sought are within the plaintiff's knowledge.

*Demurrers overruled.*