HARRY E. ANDREWS *vs.* TUTTLE-SMITH COMPANY & others.

Suffolk.    March 20, 1906. — May 15, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Assignment,* For the benefit of creditors.  *Trust.  Equity Jurisdiction,* Accounting, Circuity of action, Laches.  *Equity Pleading and Practice,* Parties, Multifariousness.  *Attorney at Law.  Limitations, Statute of.*

A voluntary assignment for the benefit of creditors when accepted by the assignee establishes a trust, the enforcement of which can be compelled in equity by a creditor or by the assignor, each of whom also is entitled to an accounting by the assignee.

One who by an assignment in writing has acquired the rights of a corporation, which has made an assignment for the benefit of creditors, and the rights of all the creditors, can maintain a suit in equity in his own name under R. L. c. 173, § 4, against the assignee to enforce the trust created by the assignment.

In a suit in equity by the creditors of an insolvent corporation, which has made a common law assignment for the benefit of creditors, to enforce the trust created by the assignment and for an accounting by the assignees, if the bill alleges that one of the assignees joined with a certain creditor in an illegitimate diversion of the property not participated in by his associates, by making a large money payment to the creditor in excess of his ratable proportion of the assets, and that subsequently the same creditor with the assent of the other assignees received merchandise of great value in payment of his debt in excess of his ratable proportion, the creditor may be made a defendant, to compel restitution from him, and his joinder as a party does not make the bill multifarious; nor does the fact that the several assignees are charged with being unfaithful to their trust in different ways prevent all the matters relating to the proper administration of the estate being disposed of in one suit to avoid circuity of action.

In a suit in equity by the creditors of an insolvent corporation, which had made a common law assignment for the benefit of creditors, to enforce the trust created by the assignment and to compel an accounting by the assignees and the restitution of money and property by one of the creditors to whom it had been paid and transferred fraudulently by the assignees in excess of his ratable proportion of the assets, an attorney at law under whose advice the assignees had acted also was made a defendant, and the bill alleged that he in conjunction with the assignees actually received the entire assets of the assignor so far as they consisted of personal property, and actively joined in collusion with the assignees in the payment and transfer to the creditor unlawfully favored, and also that he received and still retained a substantial balance in money due to the creditors which he together with the assignees refused to pay over or account for.  On demurrer *held,* that the attorney at law properly was made a defendant and that his participation in the fraudulent conversion of trust funds set forth in the bill gave ground for relief against him.

As affecting the liability of a trustee under an express trust for a fraudulent or unfaithful act the statute of limitations does not begin to run at law until the trust is terminated or repudiated by the trustee, and the same rule is applied in determining whether a plaintiff in equity has exercised reasonable diligence.

BILL IN EQUITY, filed as amended and substituted on June 26, 1905, in behalf of the plaintiff and all other creditors, if any, of the defendant the Tuttle-Smith Company, who might join therein and who had assented to the assignments for the benefit of creditors mentioned in the opinion, or to either of those assignments.

The bill alleged that the plaintiff is the owner of the rights of all the creditors under the assignments against the defendant the Tuttle-Smith Company and the other defendants, arising out of the assignments by the Tuttle-Smith Company, for the benefit of its creditors, and is the owner of the rights and claims of the Tuttle-Smith Company against all the other defendants, and is entitled in equity to enforce these rights against the defendants; that on February 15, 1899, that company was carrying on the business of a wholesale dealer and jobber in boots and shoes in Boston, and on that day made an assignment to the defendants Hood, Tuttle and Kent for the benefit of its creditors; and on February 27, 1899, made an assignment to the defendants Hood, Jenckes and Kent; that the corporations and persons who assented to the above named assignments by instruments under seal severally sold and assigned to Albert L. Harwood all of their several claims, rights and debts against the defendant the Tuttle-Smith Company, and that on or about June 3, 1902, Albert L. Harwood, by an instrument under seal, sold and assigned to the plaintiff all his right, title, interest, debts and claim, of every name and nature thus assigned to him, together with any and all rights, claims and debts of Harwood arising out of the assignments by the defendant the Tuttle-Smith Company for the benefit of its creditors, and that on or about June 2, 1902, the defendant the Tuttle-Smith Company sold and assigned to the plaintiff all its claims, rights, titles and interests against the defendants Hood, Jenckes and Kent as assignees and trustees of that company or otherwise, and against the defendant William A. Knowlton; that the defendants Hood, Tuttle and Kent as assignees, and

the defendant William A. Knowlton as their counsel, received all the stock in trade, notes, moneys, choses in action, property and estate, of every name and nature, and wherever situate, of the defendant Tuttle-Smith Company to the amount and value of $271,388.78, in trust, to reduce the property to money as soon as the same properly could be done, so that as large a sum as possible under the circumstances might be realized therefrom, and, after payment of all reasonable expenses and legal services and debts entitled to priority under the bankrupt law of the United States, to distribute and pay over the balance of the proceeds equally and ratably upon all debts, liabilities and obligations of the creditors accepting the assignments, within sixty days from the date thereof, without preference or priority; and that they accepted the trust and partially administered the same; that after the defendants Hood, Tuttle and Kent became possessed of the property and assets the defendant Hood unlawfully transferred and delivered rubber goods and merchandise to the Hood Rubber Company, which was then a creditor of the Tuttle-Smith Company for merchandise sold and delivered to the amount of $60,000 and more, and of which he was then a director and treasurer, to the amount of $31,295.24, without the assent of the defendant Edward P. Tuttle; that thereafter on or about February 27 the defendant Tuttle ceased to be one of the assignees, and the defendants Hood, Jenckes and Kent received in trust, and the defendant Knowlton received as counsel for the assignees, assets and property of the Tuttle-Smith Company to the amount of $266,060.47; that thereafterwards in July, August or November, 1899, the defendants Hood, Jenckes, Kent and Knowlton caused to be paid unlawfully to the defendant Hood Rubber Company the sum of $20,749.95, under and pursuant to a fraudulent arrangement, in addition to the rubber goods to the amount of $31,295.24; that the defendants Hood, Jenckes, Kent and Knowlton collected from a part of the accounts receivable the sum of $90,492.96, and on or about March 8, 1899, sold merchandise of the Tuttle-Smith Company and collected therefor the amount of $107,414.37, making in cash the sum of $197,907.33 received by them, and paid to the creditors accepting the assignments the sum of $180,436.53, and have a balance of cash unaccounted for to

the amount of $17,470.80, together with the remainder of the assets which they hitherto have refused to account for and pay over to the Tuttle-Smith Company, its creditors, or the plaintiff.

The bill prayed:

1. That the defendants Hood, Tuttle, Jenckes, Knowlton and Kent might be ordered severally to file full, accurate and faithful accounts of all sums of money received by them out of the assets, property and rights assigned to them and decreed to pay the same to the plaintiff, less the amount paid to the creditors and necessary cash disbursements made in winding up the affairs of the Tuttle-Smith Company.

2. That an account might be taken of the moneys received by the defendants Hood, Jenckes, Kent and Knowlton in winding up of the affairs of the Tuttle-Smith Company.

3. That the defendants Hood, Jenckes, Kent, Knowlton and the Hood Rubber Company might be charged with the sum of $20,700.95 paid to and with the fair value of the merchandise delivered to the Hood Rubber Company.

4. That the market value of the assets sold by the defendants Hood, Jenckes, Kent and Knowlton might be ascertained and those defendants ordered and decreed to pay to the plaintiff the difference, if any, between that value and the amount of money lawfully paid to the creditors and for disbursements in winding up the affairs of the Tuttle-Smith Company by those defendants.

5. That the defendants might be ordered and decreed to transfer by proper instruments· of conveyance and deliver to the plaintiff all the property and rights of the Tuttle-Smith Company assigned to the plaintiff.

6. For other relief.

The defendants Hood, Jenckes and Kent, the defendant Knowlton and the defendant the Hood Rubber Company demurred to the bill, alleging as causes for demurrer want of equity and multifariousness.

In the Superior Court the case came on to be heard upon the bill and demurrers before *Fessenden,* J., who reserved it for determination by this court. If the demurrers were sustained a final decree dismissing the bill was to be entered. If the

demurrers were overruled answers were to be filed and the case was to be heard on its merits.

*J. C. Ivy,* (*C. S. Ensign, Jr.* with him,) for the plaintiff.

*G. Putnam,* (*W. A. Knowlton* with him,) for the defendants.

BRALEY, J.    At common law a voluntary assignment by a debtor of his property for the benefit of creditors when accepted by the assignee establishes a trust the enforcement of which may be compelled in equity by a creditor or the assignor, either of whom also may demand and is entitled to an accounting by the assignee of his administration of the assets. *New England Bank* v. *Lewis,* 8 Pick. 113, 118.    *Pingree* v. *Comstock,* 18 Pick. 46.    *Noyes* v. *West,* 3 Cush. 423.    *Bouvé* v. *Cottle,* 143 Mass. 310.    *Hudson* v. *J. B. Parker Machine Co.* 173 Mass. 242.    *Sawyer* v. *Cook,* 188 Mass. 163, 165.    By assignments duly executed, and delivered by the defendant, the Tuttle-Smith Company, the assignees who accepted the trust were vested with the title to all its corporate property, which they were to marshal and administer for the benefit of such creditors as should accept in writing their provisions.    While the bill alleges that the second was made in substitution for the first, there was but one trust created by both assignments, although one of the assignees named in the second instrument is omitted from the first.    By mesne conveyances the plaintiff has acquired all the title and interest of the creditors, who also are alleged to have duly become parties as required, as well as the residuary interest of the corporation, and therefore he is clothed with the right of each to demand and receive from the defendant assignees a full accounting.    If by the established procedure of a court of equity such a bill cannot be maintained unless brought in the name of his vendors or assignors, yet by R. L. c. 173, § 4, the right to sue in his own name has been unrestrictedly conferred.    *Walker* v. *Brooks,* 125 Mass. 241.    *Gilman* v. *American Producers' Controlling Co.* 180 Mass. 319.    Upon referring to the allegations of the bill in substance they set forth the creation of the trust, its acceptance by all of the assignees, their unfaithful administration, either jointly or severally in permitting a large portion of the assigned property to be wrongfully appropriated by the Hood Rubber Company, one of the creditors, and the

retention of a balance in their possession for which they refuse either to account, or to distribute under the terms of the assignments. An accounting, however, properly may be demanded, and an account must be rendered, even if these allegations had been omitted, as this right does not rest upon maladministration, but is based upon the ground that the beneficiaries, which here are composed of creditors, and the debtor, are entitled at reasonable periods to be accurately informed as to the administration and disposition of the trust estate. *Walker* v. *Symonds*, 3 Swanst. 1, 58. *Hardwicke* v. *Vernon*, 14 Ves. 504, 510. *Maverick Congregational Society* v. *Lovejoy*, 6 Allen, 183, 189. *Howe* v. *Morse*, 174 Mass. 491. Ordinarily this is furnished by an interlocutory or final account, showing in detail the marshalling and distribution of the property. *Hayes* v. *Hall*, 188 Mass. 510. If there are a number of trustees, of whom one has failed in his duty without participation by his co-trustees in the delinquency, he alone may be chargeable with the loss, although the unfaithful act may appear either in the joint accounting, or be shown by extrinsic evidence when the account is presented for settlement and allowance. *Hayes* v. *Hall, ubi supra*, at page 514, and authorities cited. The alleged wrongful act of Hood as an assignee in joining with the Hood Rubber Company in an illegitimate diversion of the property, if not participated in by either of his associates, alone would render him accountable for any loss suffered by the creditors, or the debtor, but a separate bill for this purpose would be unnecessary, as an accounting for this disbursement falls in with and forms a part of the whole scheme of winding up and of distribution alleged to have been adopted. That the assignees who are charged with misconduct may have been unfaithful in different ways, or that for some of the alleged fraudulent acts all may not be responsible does not render the investigation of their independent conduct so complicated that distinct and irrelevant issues must be tried to the conclusion of the principal inquiry and at great expense or inconvenience to the several parties. *Cadigan* v. *Brown*, 120 Mass. 493, 495. *Sanborn* v. *Dwinell*, 135 Mass. 236. There is but one inquiry, namely, the proper administration of the estate, in which all have participated, and the advantage which a court of equity has in such an investigation over a court of law is that multi-

plicity of suits can be prevented, and the liability of each defendant who is connected with and involved in the principal inquiry may be adjusted by appropriate decree or decrees in the same suit, and the joinder of all participating parties thus becomes necessary for the purpose of affording complete relief. *Bliss* v. *Parks,* 175 Mass. 539, 543. *Lenz* v. *Prescott,* 144 Mass. 505. *Dunphy* v. *Traveller Newspaper Assoc.* 146 Mass. 495, 499. *Von Arnim* v. *American Tube Works,* 188 Mass. 515, 520.  It is true that if a creditor has received an unlawful payment the assignee, or assignees, who either directly or knowingly permitted such a misappropriation, would be chargeable with the amount, and then must look to the creditor for reimbursement, yet there is no practical difficulty in making such a creditor a party to a bill which while seeking to charge the assignees also seeks reimbursement from the debtor, so that if the spoliation is established, and the creditor is liable to restore the property, or its value, both purposes can be accomplished in one suit, thus preventing circuity of action, and accordingly the joinder of the Hood Rubber Company as a party defendant does not render the bill multifarious.  *Ward* v. *Lewis,* 4 Pick. 518.  *New England Bank* v. *Lewis,* 8 Pick. 113.  *Bliss* v. *Parks,* 175 Mass. 539.  *Trull* v. *Trull,* 13 Allen, 407.  *Loring* v. *Brodie,* 134 Mass. 453.  The allegation as to this defendant is that under assignments which conferred equal participation by way of dividends upon all assenting creditors, the corporation, being such creditor, with the concurrence of one of the assignees, who at the time also was its treasurer, received a large money payment, and subsequently with the assent of the other assignees took over merchandise of great value in payment of its debt.   These averments sufficiently charge a fraudulent conversion of assets that should have been ratably distributed as provided in the assignments, in which the defendant corporation participated. Such an arrangement perpetrated a fraud upon the other creditors equally as gross as if the debtor had procured their written assent, after first obtaining the signature of this defendant under an agreement that the assignees subsequently would make the payment in money and the transfer of merchandise, which they are alleged to have done, and comes within the principle of *Partridge* v. *Messer,* 14 Gray, 180, 181.  In such a case if the

debtor himself had furnished the consideration he could have recovered it back, and so here as the value of the property converted whether consisting of money or chattels might be recovered by the assignees, the plaintiff may compel restitution in the present suit. *Trull* v. *Trull, ubi supra.*

During their incumbency, and in the various unlawful transactions described in the bill, the assignees are alleged to have acted under the legal advice of the defendant Knowlton. An allegation of this nature with nothing further would be insufficient to make an attorney at law responsible to third parties for the fraudulent acts of his clients, who merely consulted him as to the law applicable to an intended course of action. *Hoosac Tunnel Dock & Elevator Co.* v. *O'Brien*, 137 Mass. 424, 427. The plaintiff, however, further avers that the defendant actually received coincidently with the assignees the entire assets of the debtor so far as they consisted of personal property, and actively and in collusion joined with Hood and his associates in the payment and transfer to the Hood Rubber Company, and also has received and now retains a substantial balance in money due to the creditors, and hence to the plaintiff, which he not only holds jointly with them, but also likewise refuses to account for or to pay over. By his demurrer he admits these allegations to be true, and therefore comes within the principle that persons who participate in the fraudulent conversion of property in their possession, knowing at the time that it has been delivered upon a trust, or holding trust funds for which they refuse to account, are accountable in equity in each instance to those for whose benefit the estate or fund should have been administered, and may be joined with others similarly liable where such misappropriation and misconduct consists of a series of wrongful acts in which all have taken part although perhaps in unequal degree. *LeBreton* v. *Peirce*, 2 Allen, 8, 12. *Chesterfield Manuf. Co.* v. *Dehon*, 5 Pick. 7, 10. *Otis* v. *Otis*, 167 Mass. 245, 247. If with knowledge of this misconduct by the several participants, or with such indifference to their rights as to permit superior equities to intervene, the creditors and their debtor, in whose place the plaintiff stands, failed to move promptly in the assertion of their respective rights either or both might have been barred by the time elapsing since the

alleged unlawful acts transpired, but the bill was brought well within the general statute of limitations relating to the commencement of actions at law, as well as within the general rule of practice enforced by a court of equity which always requires the exercise of reasonable diligence by plaintiffs if they are to obtain relief. *Sawyer* v. *Cook*, 188 Mass. 163. *Sunter* v. *Sunter*, 190 Mass. 449. Besides, this defence is unavailing when interposed by the assignees, as these demurrants were trustees under an express trust, which is alleged neither to have been repudiated, nor terminated, and until one or the other event occurred the statute of limitations did not begin to run in their favor. *Potter* v. *Kimball*, 186 Mass. 120.

From this examination of the bill it follows that as a case is stated for equitable relief against the defendants, who have demurred, and the suit having been seasonably instituted, their demurrers are not well taken, and must be overruled.

*Decree accordingly.*