JOHN H. DAVOREN *vs.* JAMES NOLAN & another.

Suffolk.		January 12, 1923. — March 3, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Assignment*, For benefit of creditors.		*Trust.*

Three trustees under an assignment for the benefit of the creditors of a merchant, after the creditors had received seventy per cent of their claims, made an arrangement whereby the largest creditors were to loan a sufficient amount to pay the other creditors in full, receiving as security a mortgage upon the property, and the business was to be returned to the assignor. Previous to the consummation of the arrangement, one of the trustees, who had acted as counsel for the three, asked each of his associates "what he thought would be a fair return for his services as trustee" and each replied, stating a certain sum which he would accept and bills for that amount were given to the first trustee, they being content to leave to him and to the creditors the determination of the total charges, and he thereupon completed the arrangement above described with the largest creditors and, at a conference at which his associates were not present and of which they had no notice, he received a fund for the payment of services of himself as counsel and himself and associates as trustees, from which he and one of the associates were to receive for services as trustees more than the third trustee although the third trustee was to receive the amount called for in the bill which he had transmitted. The accounts of the trustees then were closed and the property reconveyed to the assignor. Upon hearing of the unequal division, the third trustee refused a tender of an amount offered to carry out the arrangement made by the first trustee and brought a suit in equity against his co-trustees for an accounting, in which it appeared that it was impossible to decide that the work of any one trustee in his capacity of trustee was more valuable than the work of any other trustee or should be compensated at a higher rate. *Held,* that

(1) Under the provisions of the assignment in trust, neither of the trustees without the assent of the others could fix arbitrarily and irrevocably the amount of his own or of their compensation, nor determine what sum should be allowed for legal services;

(2) It could not be held as a matter of law in the circumstances that by presenting to the first trustee a statement of his services the plaintiff waived his legal right to reasonable compensation to be fixed by the trustees in their sound discretion and judgment on the basis of the value of the services rendered by each in the administration of the trust;

(3) The apportionment made by the largest creditors in conference with the first trustee was not binding upon the plaintiff;

(4) The defendants should pay to the plaintiff, from the excess which they had received beyond a fair apportionment for their services, an amount sufficient to make up the amount which properly should have been paid to the plaintiff.

BILL IN EQUITY, filed in the Superior Court on September 18, 1918, by one of three trustees under a common law assignment for the benefit of the creditors of Patrick H. Gillon against his co-trustees for an accounting as to what amount should be paid to the plaintiff for his services from an amount of $7,500 which had been placed in the hands of the defendant Williams.

The suit was referred to a master. The conclusions of the master were that the defendant Williams should receive $1,500 for professional services as an attorney at law, and that he should receive $2,121.66 and each of the other trustees should receive $2,121.67 for services as trustees; that the plaintiff had received all but $756.66 of that amount; that Mr. Williams had tendered to the plaintiff $250, which he had refused to accept, and that the defendant Williams had received $128.33, and the defendant Nolan $378.33, more from the $7,500 than they should have received. Other material findings of the master are described in the opinion. No exceptions to the report were taken.

The suit was heard upon the master's report by *Sisk*, J., by whose order there was entered an interlocutory decree confirming the report. By order of *Sanderson*, J., a final decree was entered directing the defendant Nolan to pay to the plaintiff the sum of $378.33 with interest thereon from February 1, 1914, and the defendant Williams to pay to him the sum of $378.33 with interest on $128.33 from the same date; and costs were awarded to the plaintiff.

The defendants appealed from the final decree.

*H. P. Williams, F. M. Copeland & G. B. Stebbins,* for the defendants, submitted the case on a brief.

*W. A. Murray,* for the plaintiff.

BRALEY, J. The parties not having taken any exceptions, the question is, whether the final decree for the plaintiff, based on the pleadings and the master's report, should be reversed on the defendants' appeal. The evidence is not reported and unless plainly wrong his findings of fact must stand. *Craig* v. *Warner,* 216

Mass. 386, 393. The parties were trustees under an assignment at common law for the benefit of creditors made by "a wholesale and retail liquor merchant," who had become financially embarrassed. It is unnecessary to state the details of the winding up of the business, which are fully described in the report. The creditors having been paid dividends amounting to seventy per cent, about $11,000 of indebtedness remained unsettled. The trustees having determined that the trust ought to be terminated and the business returned to the assignor, conferences were held with the representatives of the two principal creditors, referred to in the report as "the breweries," and it was agreed that a mortgage should be taken by them on his property, and they should pay the remaining indebtedness. The compensation to be received by the trustees had not been settled, and as the total amount to be advanced depended upon the exact value of the assignor's remaining assets, it became necessary to determine the compensation for the services of the trustees. The defendant Williams who had arranged the settlement thereupon conferred with his associates asking each "what he thought would be a fair return for his services as trustee," and the plaintiff and the defendant Nolan replied that $1,250 would be accepted, and bills for that amount were remitted to him. The representatives of the breweries subsequently conferred with Mr. Williams, at which the other trustees were not present, and of which conference they had no notice, and the total amount for trustees' services and counsel fees was fixed by the representatives at $7,500, divided by them as follows: to Mr. Williams for services as trustee $2,500, and for services as counsel $1,250, while Nolan was allotted $2,500 and the plaintiff $1,250. The companies after the compensation had been adjusted furnished sufficient funds to pay the other creditors and a final dividend in liquidation of all claims was declared and paid. The trustees closed their accounts, reconveyed the property to the assignor, by whom the mortgage was subsequently paid and discharged. The plaintiff and Mr. Nolan, who had previously received $1,000 each, were content to leave "to Mr. Williams and to the creditors the determination of this total amount." Of the amount received, Mr. Williams paid Mr. Nolan $1,500 and tendered the plaintiff $250, which he declined to accept because he was not satisfied with the division. The report states that

after they transmitted their bills without any knowledge of the total amount to be advanced, his co-trustees were not consulted and the alleged division had been made. While it is found that there was no intention to deceive, yet neither of the defendants informed the plaintiff of the amounts they were to get, and he seems to have discovered the transaction only at the time when as the defendants contend that a final and binding distribution was made. It also is expressly found "that it is impossible to decide that the work of any one trustee in his capacity as trustee was more valuable than the work of any other trustee, or should be compensated at a higher rate," although "the work of Mr. Williams as a whole was more valuable than that of either of his co-trustees, but a large part of that should properly be charged for as services as counsel." It is of no consequence that when the assignment was made one of the brewing companies selected their counsel Mr. Williams as a trustee, while the other with the "smaller creditors" named Mr. Nolan, and the plaintiff was chosen because he had been an employee of the assignor for many years, and had full knowledge of the business which the trustees under his management thereafter carried on for several months. The plaintiff and the defendants having accepted, were trustees of an express private trust, jointly charged with the supervision, liquidation, and final settlement of the debtor's estate. *Boston* v. *Doyle,* 184 Mass. 373. *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461, and cases cited. The powers conferred could not under the terms of the assignment be delegated even to creditors, and neither of the trustees without the assent of the others could arbitrarily and irrevocably fix the amount of his own, or their compensation, nor determine what sum should be allowed for legal services. *Morville* v. *Towle,* 144 Mass. 109. *Hayes* v. *Hall,* 188 Mass. 510. *Ashley* v. *Winkley,* 209 Mass. 509, 528. *Jones's Appeal,* 8 Watts & Serg. 143. *Crane* v. *Hearn,* 2 C. E. Green, 378, 381. It cannot be held as matter of law that by sending at Mr. Williams's request an estimate of the amount, the plaintiff waived his legal right to reasonable compensation to be fixed by the trustees in their sound discretion and judgment on the basis of the value of the services rendered by each in the administration of the trust. *Bennett* v. *Pierce,* 188 Mass. 186, 188. *Hayes* v. *Hall,* 188 Mass. 510. *Wilcock* v. *Massachusetts Bonding & Ins. Co.* 223 Mass. 482, 485. The

apportionment made by the representatives of the breweries which was adopted and followed by Mr. Williams was not binding on the plaintiff, who was under no express or implied legal obligation to accept the share allotted to him, while each of his associates received a much larger amount. The master accordingly was justified in finding that in effect the breweries agreed to take a mortgage on the property, pay the unliquidated indebtedness and advance $7,500 for the charges of administration, and the money received was to be apportioned by the trustees acting jointly and not by any of them individually. It is also contended that the defendants have no funds equitably belonging to the plaintiff. But after an allowance for the professional services of Mr. Williams, each defendant is found to have been overpaid at the expense of the plaintiff, who is entitled to, and can maintain the bill for contribution on the findings stated in the report. *Cole* v. *Bates,* 186 Mass. 584, 586. The amounts awarded by the court having been in accordance therewith the decree should be affirmed with costs of the appeal.

*Ordered accordingly.*