King, J.
Plaintiff, Lake States Insurance Company (“Lake States”) obtained an out-of-state consent judgment against defendant, Consumer Insurance Services of America, Inc. (“CISA”) in the amount of $172,500. Plaintiff now seeks to reach and apply funds being held by defendants Daniel C. Cohn and David B. Madoff as Trustees (“Trustees”) of the Creditor’s Trust Agreement which was entered into by the Trustees and defendant CISA. On March 7, 2001, this court held a hearing on defendant Trustees’ motion to dismiss plaintiffs Complaint. For the reasons set forth below, defendant Trustees’ motion to dismiss is ALLOWED.
BACKGROUND
Plaintiffs Complaint alleges the following. Plaintiff Lake States is a corporation that is domiciled and licensed to conduct business in Michigan. Defendant CISA is a Massachusetts corporation with its principal place of business in Beverly, Massachusetts. CISA and its affiliates, Adjustnet, Inc., Insurance Technology Services of America, Inc., and Insurance Holdings of America, Inc. (collectively, “the Company”) ceased business operations in early June 2000.
On June 19, 2000, the Company transferred its assets to the Trustees pursuant to a Creditors’ Trust Agreement (“Agreement”).[2] The Trustees and the Company entered into the Agreement to ensure an orderly wrap-up of the business and an equal distribution of the its remaining assets for the benefit of its creditors. Under the Agreement, the Company transferred $4,164,502 to the Trustees and granted a security interest in all of its assets to the Trustees.
The Company’s creditors, including Lake States, were given notice of the Trust and were invited to participate in the distribution of the Company’s assets by assenting to the Trust’s terms.[3] Lake States did not execute and deliver its Assent to the Trustees and thus declined to participate in the distribution of the Company’s assets.
On July 21, 2000, Lake States filed a Complaint against CISA in a Michigan Court, alleging breach of contract, breach of fiduciary duty, and unjust enrichment based upon a contract previously entered into between CISA and Lake States. On September 27, 2000, the parties filed a Stipulation and Order of Consent Judgment against CISA in the amount of $172,500.
On December 15, 2000, Lake States filed this action to reach and apply funds in the amount of $172,500 held in the Trust in satisfaction of the judgment it obtained in Michigan, plus interest and costs.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any reasonable inferences which can be drawn therefrom in plaintiffs favor. Spinner v. Nutt, 417 Mass. 549, 550 (1994). A motion to dismiss for failure to state a claim should not be granted “unless it appears beyond doubt that plaintiff can prove no set of facts in support of its claim that would entitle it to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977) (quoting Coley v. Gibson, 355 U.S. 41, 45-46 (1957)).
An action to reach an apply “is a method of ‘reaching’ or securing property of a debtor that, by its nature, cannot be secured by ‘legal’ attachment, and applying that property to pay the debt owed . . . [i]t operates to secure property... of the debtor that is in the hands of third parties.” Shapiro, Perlin, and Con *105 nors, Collection Law §11:1, 424 (2000). A reach and apply action is equitable in nature and involves a two-step process. See Stockbridge v. Mixer, 215 Mass. 415 (1913). The first step is that plaintiff establishes indebtedness by the principal defendant. Stockbridge, 215 Mass. at 418. “The second [step] is the process for collecting the debt, when established, out of property rights which cannot be reached on an execution." Stockbridge, 215 Mass. at 418. See also, Springfield Redevelopment Authority v. Garcia, 44 Mass.App.Ct. 432, 436 (1998); G.L.c. 214, §3(6). The plaintiff, however, . can reach only what the debtor can assign." Newton Housing Authority v. Cumberland Construction Co. Inc., 5 Mass.App.Ct. 1, 9 (1977) (citing Bethlehem Fabricators, Inc. v. H.D. Watts Co., 286 Mass. 556 (1934)).
Here, on June 19, 2000, the Company transferred its assets to the Trustees pursuant to the Agreement in order to effect the orderly distribution of the Company’s assets and to provide pro rata payment of creditors’ claims.[4] According to Section 7.1 of the Agreement, only those creditors who assented to its terms by executing and delivering an Assent to the Trustees by 5:00 p.m. on August 15, 2000, would become beneficiaries and be entitled to the distribution of the Company’s assets. Lake States did not assent to the Agreement. Instead, it filed suit against CISA in a Michigan Court one month after the Company’s assets had been transferred to the Trust for the benefit of its creditors. Thus, when Lake States filed suit, the Company had no executable assets. Instead, all of its assets had been incorporated into the Trust via the Agreement. See Agreement, §6. Accordingly, because there is no leviable property, there is nothing to reach and apply.'
Moreover, a creditor who fails to make a timely assent to Em assignment for the benefit of creditors is not entitled to any distribution by the Trustees. Strasnick v. Cinnamon, 282 Mass. 97, 100 (1933); International Trust Co. v. Livermore, 220 Mass. 122 (1915) (plaintiffs who chose not to assent because they believed they had a . means of compelling a settlement more advantageous to the plaintiff than they would get under the assignment [for the benefit of creditors]," could not participate in the assignment).
Lake States had notice of the Agreement which clearly set forth the procedure for assenting and the effect of a failure to do so. Had Lake States assented to the Agreement, it would have been entitled to a pro rata share of its claim against CISA. Lake States failed to make a timely assent and therefore has no claim against the Trustees. See Strasnic, 282 Mass. at 100; Livermore, 220 Mass. at 122.
Moreover, Lake States does not allege that the Trustees acted in bad faith or without reasonable judgment; thus, its reliance on Illinois Watch Case Co. v. Cowan-Myers Co., 250 Mass. 347 (1924), is misplaced. In Illinois Watch, the defendant corporation fraudulently conveyed all of its property into a trust only to have it reconveyed after the trust’s administration. Id. at 350. The Illinois Watch Court noted that ”[i]t is apparent, from the tenor of the conveyance . . . [that the corporation] desired an extension [to meet its obligations], and the trust was created to enable the debtor to gain time . . . [and] to place the debtor’s property beyond the legal pursuit of creditors.” Id. Lake States neither alleges that the Company fraudulently conveyed its assets to defendant Trustees, nor alleges that the Trustees failed to comply with the requirements of the controlling statute. See G.L.c. 203, §§40-42 (setting forth obligations to creditors). Accordingly, this court concludes that plaintiff has failed to state a claim upon which relief can be granted pursuant to Mass.R.Civ.P. 12(b)(6).
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants Daniel C. Cohn and David B. Madoff, as Trustees for the benefit of creditors of Consumer Insurance Services of America, Inc.’s motion to dismiss, pursuant to Mass.R.Civ.P. 12(b)(6) be ALLOWED. Judgment shall enter dismissing the complaint.

 This type of agreement is also known as a “trust mortgage” arrangement and is modeled after the Chapter 7 of the United States Bankruptcy Code (11 U.S.C. §§701 et seq.).

 Section 7.1 of the Agreement specifically states, “(a]ny creditor who does not so execute and deliver to the Trustees an Assent (a form attached to the Agreement) shall not be a Beneficiary and shall not be entitled to any distribution or other benefit hereunder.” Section 1.1(d) provides that the “[a]ssent deadline shall mean 5:00 p.m. on August 15, 2000 which shall be the deadline for the submission of Assents to the Trustee.” Because Lake States did not assent to the Agreement, it has forfeited its right to participate in the Agreement. In their memorandum in support of their motion to dismiss, the Trustees state that about 200 creditors, representing over $30 million in claims, assented to the terms of the Trust.

 The Trust Agreement that is the subject of this action is known as an assignment for the benefit of creditors which is defined as: a voluntary conveyance by a debtor without consideration of substantially all of his property to a party in trust to collect the amount owing to him, to sell and convey the property, to distribute the proceeds of all of the property among his creditors, and to return the surplus, if any, to the debtor. See 6 Am. Jur.2d, Assignment for the Benefit of Creditors, §§1-6 (1999). The purpose of such an assignment is to afford an equal distribution of the assignor’s estate to all of his creditors in proportion to their claims. In Massachusetts, an assignment for the benefit of creditors is recognized under both common law and by statute. See Andrews v. Tuttle-Smith Co., 191 Mass. 461, 465 (1906) (“[a]t common law a voluntary assignment by a debtor of his property for the benefit of creditors when accepted by the assignee establishes a trust . . .”); G.L.c. 203, §§40-42.